18893

Virginia N. EVANS, Respondent, v. AMERICAN HOME
ASSURANCE COMPANY, Appellant

(166 S. E. (2d) 811)

*Messrs. Clifford F. Gaddy, Jr., and Mann, Foster, Johnston & Ashmore,* of Greenville, *for Appellant,*

*Messrs. Abrams, Bowen & Townes,* of Greenville, *for Respondent,*

March 18, 1969.

BRAILSFORD, Justice.

Following involvement in an automobile collision with Charles W. Walton, who was driving an automobile rented from Econo Car Rentals of Charleston, Inc., plaintiff recovered judgment against Walton. Plaintiff then sued Econo-Car's liability insurance carrier. The company disclaimed liability upon the ground that Walton had violated the cooperation clause of the policy. The circuit judge, who tried the case without a jury, found that the insurance company had failed to prove a violation of this policy provision, and alternatively, that any such breach had been waived by the insurer. This appeal challenges the sufficiency of the evidence to sustain these findings.

Public liability insurance not only affords protection
to insured motorists, it serves the public purpose of
affording protection to innocent victims of motor
vehicle accidents. In recognition of this important public
purpose, the legislatures of some states have enacted com-
pulsory liability insurance laws. Others, including our Gen-
eral Assembly, have sought protection for highway victims,
short of compulsory insurance, by the enactment of financial
responsibility and uninsured motorist statutes. Although
these statutes do not by their terms require coverage for all
drivers, their purpose and effect is to induce the purchase of
liability insurance by a very high percentage of motorists.

As to liability insurance which is required by law, we
have held that a breach of policy conditions by the insured
after the injury will not bar recovery against the insurer by
the victim of the insured's negligence. *Ott v. American
Fidelity & Cas. Co.*, 161 S. C. 314, 159 S. E. 635, 76
A. L. R. 4; 7 Am. Jur. (2d), Automobile Insurance, Sec.
226, p. 576. Our statute so provides as to a certified policy
under the Motor Vehicle Responsibility Act, Sec. 46-750.20,
Code of 1962; Sec. 46-702(7) (b), 1968 Supplement.

While the same rule does not apply to a "voluntary"
policy, it is settled law with us that a liability insurer
may successfully defend upon the ground that the
insured has violated the cooperation clause of the policy only
when the breach has been material and has resulted in sub-
stantial prejudice to the insurer. Furthermore, the insurer
must be reasonable in its demands and diligent in its efforts
to secure the cooperation of the insured. *Meehan v. Com-
mercial Cas. Ins. Co.*, 166 S. C. 496, 165 S. E. 194; *Penn-
sylvania Threshermen & F. M. Cas. Ins. Co. v. Owens*, 238
F. (2d) 549 (4th Cir.); *Pharr v. Canal Ins. Co.*, 233 S. C.
266, 104 S. E. (2d) 394; *Crook v. State Farm Mut. Ins.
Co.*, 235 S. C. 452, 112 S. E. (2d) 241. These are issues
of fact for determination by the jury or by the trial judge
where, as here, a jury trial has been waived, and the burden

of proof rests squarely upon the insurer. *Crook v. State Farm Mut. Ins. Co., supra.*

The only issue which we need to decide is whether the trial judge erred as a matter of law in holding that the insurer had failed to meet the burden of establishing a significant violation of the cooperation clause by Walton. We state the facts in the light of the rule that in resolving this issue the evidence must be viewed most favorably to plaintiff.

The collision between automobiles driven by plaintiff and Walton occurred in the City of Greenville over the weekend of February 18, 1967. Walton was a resident of Greenville but at the time of the collision was a seaman in the United States Navy stationed in Charleston. He was arrested and charged with reckless driving and leaving the scene of the collision. An adjuster for the insurer interviewed him at the city jail on February 20, and he signed a statement prepared by the adjuster.

The tort action was commenced against Walton and Econo-Car in late April, 1967. Walton was absent without leave from the Navy, and he was served through the Chief Highway Commissioner, pursuant to Section 10-431, Code of 1962. He did not receive actual notice of the pendency of the action until August 24, 1967.

In the meantime, Clifford Gaddy, Jr., Esq., a member of the Greenville Bar, had been retained by the insurer to represent Econo-Car and Walton. The file, which was promptly forwarded to him, did not indicate that Walton had been served. The attorney made no effort to locate him until July, when he was advised by the Naval Base in Charleston that Walton was A. W. O. L. No further effort to locate Walton was made until the case was placed on the trial roster about ten days before a term of the Greenville County Court to commence August 28. Walton was still A. W. O. L., and the insurer's attorney engaged a private detective to look for him in Greenville. The detective located

and interviewed several members of Walton's family. As a result of this investigation, Walton called the attorney on the night of August 24 and met him at a sister's house on Saturday, August 26.

On the morning of August 24, before hearing from Walton, Mr. Gaddy had moved unsuccessfully for a continuance upon the ground that Walton could not be located.

On August 25, Mr. Gaddy wrote a letter to Walton referring to their previous telephone conversation and emphasizing the importance of his being in court on Monday, August 28. Several copies of this letter were mailed to Walton in care of the various members of his family who had been located in Greenville. When the attorney went to interview Walton on Saturday, August 26, he had a subpoena served on him by a constable.

Walton was friendly and cooperative, answering the questions which the attorney asked about the accident. Mr. Gaddy told him that the case would likely not be reached until the morning of August 29. However, he requested Walton to meet him in the courtroom at 2:30 on the afternoon of August 28. Walton replied that he would be there, but he failed to keep this appointment.

When asked what further effort he made to have Walton at the trial, the insurer's attorney testified that later in the afternoon he called the sister at whose home he had met Walton on the preceding Saturday and "asked her to leave word for him to be in Court the next morning." He further testified that next morning, as the trial was about to start he had his secretary call the "sister's house and leave a message that we were starting into the trial of the case."

When Walton failed to appear on Tuesday morning, Mr. Gaddy did not advise the court that he had been located in Greenville after the motion for a continuance had been refused, and that he had agreed to attend the trial. The motion to continue was not renewed and no request was made

for an opportunity to investigate the reason for Walton's failure to keep his promise to attend the trial. No such investigation was ever made, and the record is silent as to the reason for Walton's failure to attend.

Mere failure to appear at the trial does not establish that Walton was deliberately non-cooperative, and the insurer affirms that he was cooperative in all other respects. Walton may have become ill, met with foul play or been arrested by military police and returned to the Naval Base in Charleston. In this contest between the injured party and the tort feasor's insurer, the burden was upon the insurer to establish that the tort feasor's failure to attend the trial was his deliberate act. On this record we can not conclude as a matter of law that this burden has been met by the insurer. The issue was for the trial court.

The other question argued in the brief becomes moot.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.