2055

Linda Johnson SHORES, Personal Representative of the Estate of Kenneth Johnson, Respondent v. Mitchell L. WEAVER and Pennsylvania National Mutual Casualty Insurance Company, Defendants, of whom Pennsylvania National Mutual Casualty Insurance Company is, Appellant. Appeal of PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.

(433 S.E. (2d) 913)

Court of Appeals

*Charles E. Carpenter, Jr., Deborah L. Harrison,* and *William H. Hensel,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for appellant.*

*Jon Rene Josey,* of *Rogers & McBratney,* Florence, *for respondent.*

Heard May 17, 1993; Decided July 19, 1993.

Reh. Den. Aug. 19, 1993.

LITTLEJOHN, Acting Judge:

Pennsylvania National Mutual Casualty Insurance Company appeals from a declaratory judgment holding it must provide coverage for an insured who suffered a judgment to be taken against him by default without providing notice to Pennsylvania National of the pending lawsuit as required by the policy. We affirm.

Pennsylvania National issued an automobile liability insurance policy to Mitchell Weaver. Among other things the policy required Weaver to promptly forward to Pennsylvania Mutual any legal papers in connection with an accident or loss, and provided that legal action could not be maintained against

Pennsylvania Mutual unless Weaver fully complied with this condition. The policy provided minimal limits liability coverage.

On August 13, 1983, Kenneth Johnson was injured in an accident while riding as a passenger in Weaver's vehicle. Johnson suffered a serious brain injury which left him totally and permanently disabled. Pennsylvania National was notified of the accident on August 17, 1983 and assigned adjustment of the claim to Crawford and Company of Florence, South Carolina. In October 1983, Johnson's attorney, Marvin Jackson, notified Crawford and Company that he represented Johnson. Jackson wrote Crawford and Company again in December 1983 and February 14, 1984, offering to settle the case for the policy limits. Finally, on February 14, 1984, Jackson wrote to Crawford and Company stating that he had heard nothing on his prior offer to settle and adding:

> This offer to settle for $15,000 will remain open from ten (10) days of the date of this latter and if settlement is not consummated within this time, I will file suit on behalf of my Client and the settlement offer [contained] in this letter will be withdrawn.

The record reflects that Crawford and Company refused this demand.

Linda Johnson Shores, representing Johnson's estate, served an action on Weaver on May 7, 1986. Weaver did not forward the pleadings to Pennsylvania National or otherwise give any notice of the suit. Weaver failed to respond and on January 9, 1987, the court entered a default against him. After a hearing at which Weaver was present, the court entered a judgment for damages for Johnson against Weaver for $250,000 on January 27, 1988.

Pennsylvania National was not given notice of the entry of default, the damages hearing, or the entry of the order for judgment. Because six years had elapsed since the accident, Pennsylvania National destroyed its files in the matter.

Shores filed this action on behalf of Johnson seeking a declaration of coverage under Weaver's policy for the default judgment. Pennsylvania National answered and, in a motion for summary judgment, raised its policy defense that Weaver failed to forward the pleadings to Pennsylvania National.

Johnson also moved for summary judgment. The circuit court heard the cross-motions for summary judgment and ruled that Pennsylvania National could not escape its liability to Johnson for Weaver's failure to forward the pleadings in compliance with the policy's provision. Pennsylvania National appeals.

Pennsylvania National argues that under the statutory scheme as it exists today, only "certified" or "SR-22"-type policies may not be defeated or voided by the insured's breach of the policy conditions, and since Weaver's policy was not a "certified" policy, it was not subject to the mandatory policy provisions of S.C. Code Ann. § 56-9-20 (1991), which provides in pertinent part:

> The following words and phrases when used in this chapter shall, for purposes of this chapter have the meanings respectively ascribed to . . . them in this section, except in those instances where the context clearly indicates a different meaning:
>
> \*    \*    \*    \*    \*    \*
>
> (7) "Motor vehicle liability policy": An owner's or an operator's policy of liability insurance that fulfills all the requirements of §§ 38-77-140 through 38-77-230, *certified as provided in § 56-9-550 or 56-9-560 as proof of financial responsibility* and issued, except as otherwise provided in § 56-9-560, by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person or persons named therein as insured, and any other person, as insured, using the vehicle described therein with the express or implied permission of the named insured, and subject to the following special conditions:
>
> \*    \*    \*    \*    \*    \*
>
> (b) Provisions deemed incorporated in such policy. Every motor vehicle liability policy is subject to the following provisions, which need not be contained therein:
> (1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by the motor vehicle liability policy occurs;
>
> \*    \*    \*    \*    \*    \*

(3) No Statement made by the insured or on his behalf and no violation or the policy shall defeat or void the coverage. . . .

(emphasis added).[1] Pennsylvania National basically takes issue with the finding by the circuit court that "the Automobile Reparation Reform Act incorporated by express reference the provisions of Chapter 9 of Title 56." We need not decide whether the trial court was correct on this assertion, however. We hold on other grounds that a liability insurance policy required by statute before one can register a motor vehicle may not be defeated or voided after a loss by the insured's failure to forward to the insurer the pleadings in an action brought against the insured by a third-party victim of the insured's negligence. *See* Rule 220(c), SCACR (the appellate court may affirm any ruling, order, or judgment upon any ground appearing in the Record on Appeal).

Prior to 1974 there was no requirement that all owners and operators of motor vehicles carry liability insurance. *Barkley v. International Mut. Ins. Co.*, 227 S.C. 38, 86 S.E. (2d) 602 (1955). Owners and operators had to prove financial responsibility only after an accident resulting in liability or after accumulating too many traffic violation points. S.C. Code Ann. §§ 46-135 through 46-138.2 (1962); Act No. 311, 1959 S.C. Acts 567, § 14. One way to do so was by obtaining a certificate of insurance. *See* Act No. 723, § 18, 1952 S.C. Acts 1853; S.C. Code Ann. § 46-747 (1962). Accordingly, motor vehicle liability insurance was "voluntary" except where the statutes required a person to prove financial responsibility, and the person elected to do so by obtaining insurance. Even in this era of voluntary insurance, an insured's failure to forward suit papers to the insurer under a "voluntary" policy did not bar recovery by an innocent third party unless the insurer could show that the failure to give such notice resulted in substantial prejudice to its rights. *Factory Mutual Liab. Ins. Co. v. Kennedy*, 256 S.C. 376, 182 S.E. (2d) 727 (1971).

Our legislature recognized, however, that public liability insurance not only affords protection to insured motorists, but

---

[1] This provision has remained virtually unchanged since its initial enactment in 1952 and is now found in Chapter 9 of Title 56 (the Motor Vehicle Financial Responsibility Act). *See* Act No. 723 § 21, 1952 S.C. Acts 1853; S.C. Code Ann. § 46-702(7)(b )(3) (Supp. 1975).

also serves the public purpose of affording protection to innocent victims of motor vehicle accidents. *Factory Mutual Liab. Ins. Co v. Kennedy; Evans v. American Home Assurance Co.,* 252 S.C. 417, 166 S.E. (2d) 811 (1969). Accordingly, the legislature enacted the Automobile Reparation Reform Act in 1974. *See* S.C. Code Ann. 56-11-10, *et seq* (repealed by 1987 Act No. 155 § 25(b) and recodified in Chapter 77 of Title 38 and Chapter 10 of Title 56) (Act No. 155, § 9, 1987 S.C. Acts 385). Part of that Act, S.C. Code Ann. § 56-10-220 (1991), requires that every person applying to register a motor vehicle and obtain a license for the vehicle declare the vehicle to be insured and to furnish to the Department of Highways and Public Transportation "his certificate that such motor vehicle is an insured motor vehicle and that he will maintain insurance thereon during the registration period." Hence, the legislature decided that all vehicles registered and licensed in this State must be insured to the minimal coverage and limits required by the Motor Vehicle Financial Responsibility Act. With the passage of this Act, South Carolina became a mandatory insurance state.[2] *Pennsylvania National Mut. Casualty Ins. Co. v. Parker,* 282 S.C. 546, 320 S.E. (2d) 458 (Ct. App. 1984). *Compare Factory Mutual Liab. Ins. Co. v. Kennedy* (noting that as of 1971, South Carolina was among those states which sought protection for highway victims, short of compulsory insurance, by the enactment of financial responsibility and uninsured motorist statues, rather than compulsory liability insurance for all registered vehicles).

The public purpose of affording protection for innocent parties injured by another's negligence has long been a part of our law. In *Ott v. American Fidelity & Casualty Co.,* 161 S.C. 314, 159 S.E. 635 (1931), the Supreme Court had before it a case involving a liability insurance policy issued in accordance with Section 5 of Act No. 170 of the 1925 Statutes, which re-

---

[2] South Carolina Code Ann. § 56-10-10 (1991) required "security" before a motor vehicle may be registered in South Carolina. South Carolina Code Ann. § 56-10-20 (1991) provides that the security required by the Motor Vehicle Registration and Financial Security chapter of Title 56 is a policy of insurance which provides mimimal coverage required by the Automobile Reparation Reform Act. However, the Executive Director of the Department of Highways and Public Transportation may approve and accept another form of security in lieu of a liability insurance policy upon finding that the alternative form of security adequately provides the benefits required by the chapter.

quired applicants for certificates of passenger carrying vehicles on public highways to procure liability insurance. The plaintiff sued a transit company for injuries the plaintiff received on the transit company's bus. The plaintiff also served the complaint on the insurance company. The circuit court granted nonsuit for the insurer under a policy clause which provided that the insurer was not liable for any loss until a final judgment was recovered against an insured. After the plaintiff obtained a judgment against the transit company, he brought an action against the insurer to recover the amount of the judgment. The insurer raised as a defense the insured's failure to give immediate written notice of the plaintiff's claim, and asserted that it had no notice of the accident until served with the action against the insured. Both parties moved for directed verdict, but the circuit court denied the motions. The jury found for the insurer, and the plaintiff appealed.

The Supreme Court held that the circuit court should have granted the plaintiff's motion for a directed verdict. The Court stated:

> [The insurer's] position would undoubtedly be correct in a suit brought against the insurer by the insured, but the same rule would not necessarily apply in a suit by an injured member of the public. We must assume that the policy was intended, not to evade, but to effectuate the purposes of the statute in compliance with which it was filed, and it must be construed in the light of such statute. The manifest purpose of the statute is the protection of passengers and members of the public who may be injured by negligence of bus operators, and a policy issued for such purpose must be construed most strongly against the insurer.
>
> * * *
>
> It is urged that it would work a great hardship on the insurer to require him to defend a case involving an accident as to the occurrence of which he has had no prior notice, as he would be thus deprived of an opportunity to adequately prepare his defense. The same point is raised and well answered in [*Edwards v. Fidelity & Casualty Company*, 11 La. App. 176, 123 So. 162 (1929)], in which

the court said: "As to the hardship and disadvantage under which the insurer labors, and the difficulty under which the injured party finds himself, we think that the ends of justice require that the benefit of the doubt should be given to the injured party, who is in no way at fault, and whose loss was caused entirely by some one else, as against the insurer who has entered into the contract with full knowledge of the statute and for a monetary consideration."

Furthermore, it appears to us that to allow the insured's failure to give notice of the accident to prevent the injured person's recovery would be to practically nullify the statute by making the enforcement of the rights of the person intended to be protected dependent upon the acts of the very person who caused the injury.

*Id.* at 317-319, 159 S.E. at 636-637.

The purpose of the Motor Vehicle Financial Responsibility Act and the Automobile Reparation Reform Act of 1974 is to afford greater protection to those injured through the negligent operation of automobiles in the State. *Pennsylvania National Mut. Casualty Ins. Co. v. Parker*, 282 S.C. 546, 320 S.E. (2d) 458 (Ct. App. 1984). *See also McAllister v. State Farm Mut. Auto. Ins. Co.*, 301 S.C. 113, 390 S.E. (2d) 383 (Ct. App. 1990) (noting that our Supreme Court has over the years adopted a policy of construing the Financial Responsibility Act strictly against insurers and liberally in favor of the insured in order to accomplish the purposes underlying the statute); *Canal Insurance Co. v. The Insurance Company of North America*, ___, S.C. ___, ___, 431 S.E. (2d) 577 (S.C. 1993) (noting that by enacting the minimal limits coverage statute now found in S.C. Code Ann. § 38-77-140 (1989), the legislature intended to mandate coverage for the benefit of the public). The legislature has expressed an intent to prohibit an insured's violation of the policy provisions from defeating or voiding coverage for third parties where the legislature deemed the coverage necessary to protect those third parties. Section 56-9-20(7). Prior to 1974 only those policies required for certain high-risk drivers who would be prohibited from registering an uninsured vehicle were subject to this expression. After 1974, however, no one could lawfully register an

uninsured vehicle since the legislature required all vehicles to carry liability insurance for the protection of third parties. Thus, the legislature has determined that for all vehicles registered in South Carolina, at least minimal coverage is necessary to protect the public. We hold that in accordance with the public purpose of protecting innocent third parties through mandatory insurance Weaver's violation of a provision of the policy providing this mandatory minimal coverage did not defeat or void that coverage.

Pennsylvania National argues that even after the 1974 Act, "voluntary" insurance policies existed in South Carolina, relying on the case of *Merit Insurance Company v. Koza,* 274 S.C. 362, 264 S.E. (2d) 146 (1980). We disagree. The accident in *Koza* occurred in October 1976, two years after the enactment of the Automobile Reparation Reform Act of 1974. The Court in *Koza* stated:

> It is important to note that the insurance policy in question is a "voluntary" automobile liability policy and, therefore, not controlled by the provisions of Section 56-9-20(7)(b), S.C. Code of Laws (1976). *See Factory [Mutual] Liability Insurance Co. v. Kennedy,* 256 S.C. 376, 182 S.E. (2d) 727 (1971); *Evans v. American Home Assurance Co.,* 252 S.C. 417, 166 S.E. (2d) 811 (1969). As such, Merit has the benefit of asserting the insured's failure to comply with the policy provisions as a defense against actions brought by injured third parties if it has been substantially prejudiced by the insured's noncompliance. *Factory Mutual liability Insurance Co., supra.*

274 S.C. at 364, 264 S.E. (2d) at 147.

We have examined the appellate record in *Koza. See Stanley Smith & Sons, Inc. v. Dumas,___S.C. ___, ___,* 431 S.E. (2d) 595 (Ct. App. 1993) (wherein this Court took notice of the contents of the appellate record in another, unrelated case). The policy in question in *Koza* was issued through a Michigan Agency and covered a vehicle registered in Florida. The policy was not issued under a compulsory insurance statute and, accordingly, was a "voluntary" policy. As the trial judge in *Koza* stated in ruling on the insurer's directed verdict motion, the policy was a "purely voluntary out of state contract" and was "not helped by a compulsory insurance act, such as South

Carolina now has. . . ." The insurance policy in the case before us, however, was not a "voluntary" policy because it was required by the 1974 Automobile Reparation Reform Act. The policy provided minimal liability insurance required by law, and Weaver's breach of policy conditions after the injury to Johnson did not bar recovery against Pennsylvania National by Johnson, the victim of the Weaver's negligence. *See Evans v. American Home Assurance Co.*, 252 S.C. 417, 166 S.E. (2d) 811 (1969) (as to liability insurance which is required by law, a breach of policy conditions by the insured will not bar recovery against the insurer by the victim of the insured's negligence).

In conclusion, we hold, as a matter of public policy, the minimum limits automobile liability insurance policy involved in this case was not defeated or voided by Weaver's failure to comply with policy notice provisions after the accident resulting in Johnson's injuries, because the coverage was mandated by the legislature to protect innocent third parties, such as Johnson. Accordingly, the judgment is

Affirmed.

GARDNER and BELL, JJ., concur.