571 S.E.2d 715

**Kevin COWAN & Jimmy Blanding, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Respondent.**

**No. 3555.**

Court of Appeals of South Carolina.

Submitted Sept. 9, 2002.

Decided Oct. 7, 2002.

Rehearing Denied Nov. 21, 2002.

Samuel D. Harms, of Greenville, for appellants.

Robert D. Moseley, Jr., of Greenville, for respondent.

STILWELL, J.

Kevin Cowan and Jimmy Blanding (collectively Appellants) brought this declaratory judgment action against Allstate Insurance Company to recover damages awarded by default against Allstate's insured. The circuit court ruled Allstate could assert its insured's failure to comply with the cooperation clause of the insurance policy and deny coverage when it lacked actual knowledge of the lawsuit. We affirm.[1]

## FACTS

Allstate issued the insurance policy to its named insured, Charles A. Griffis, who was the owner of the vehicle involved in the accident. Stacy Johnson was operating Griffis' automobile with his permission at the time of the accident. Although Appellants' counsel sent a letter of representation to Allstate, they did not send a courtesy copy of the summons and complaint, nor otherwise provide any notice that the lawsuit, which only named Johnson as the defendant, had been filed

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

and served. Johnson did not forward the summons and complaint to Allstate and did not file an answer. Allstate's first notice of the existence of a lawsuit was when Appellants' counsel forwarded a copy of the order awarding damages following the entry of default. Allstate's motion on behalf of Johnson under Rule 60(b), SCRCP to be relieved of the judgment was denied.

Appellants then brought this declaratory judgment action against Allstate to collect the judgment entered against its insured based on coverage provided by the insurance policy. On cross motions for summary judgment, the circuit court held that Allstate could assert its insured's failure to comply with the cooperation clause to deny coverage when it lacked actual knowledge of the lawsuit.

## LAW/ANALYSIS

The sole issue on appeal is whether S.C.Code Ann. § 38–77–142(B) (1997) overturned this court's holding in *Shores v. Weaver*, 315 S.C. 347, 433 S.E.2d 913 (Ct.App.1993). We hold that the statutory language modified *Shores*, and affirm the circuit court.

In *Shores*, this court found that a violation of the cooperation clause of an insurance contract providing the statutory minimum amount of automobile liability insurance cannot prevent recovery by an innocent victim. *Id.* at 355, 433 S.E.2d at 917. This court stated:

Furthermore, it appears to us that to allow the insured's failure to give notice of the accident to prevent the injured person's recovery would be to practically nullify the statute by making the enforcement of the rights of the person intended to be protected dependent upon the acts of the very person who caused the injury.

*Id.* at 354, 433 S.E.2d at 916 (quoting *Ott v. Am. Fid. & Cas. Co.*, 161 S.C. 314, 319, 159 S.E. 635, 637 (1931)). This court went on to hold:

In conclusion, we hold, as a matter of public policy, the minimum limits automobile liability insurance policy involved in this case was not defeated or voided by [the insured's] failure to comply with policy notice provisions after the accident resulting in [the victim's] injuries, because

the coverage was mandated by the legislature to protect innocent third parties. . . .

*Id.* at 356, 433 S.E.2d at 917. .

Section 38–77–142(B) provides in pertinent part:

If an insurer has actual notice of a motion for judgment or complaint having been served on an insured, the mere failure of the insured to turn the motion or complaint over to the insurer may not be a defense to the insurer, nor void the endorsement or provision, nor in any way relieve the insurer of its obligations to the insured, provided the insured otherwise cooperates and in no way prejudices the insurer.

S.C.Code Ann. § 38–77–142(B) (Rev. 2002) (1997 Act No. 154, § 11, eff. Mar. 1, 1999).

Appellants argue Shores is still controlling precedent because *USAA v. Markosky,* the progeny of *Shores,* continued to apply it after the effective date of § 38–77–142(B). *USAA v. Markosky,* 340 S.C. 223, 530 S.E.2d 660 (Ct.App.2000). Their reliance is misplaced. *Markosky* did not apply this statute. While it is true *Markosky* was decided after the effective date of the statute, the accident occurred before its effective date, and this court applied the *Shores* law. Therefore, *Markosky* cannot be read to hold that *Shores* survives the statute. Appellants then reason section 38–77–142(B) expanded *Markosky* by rendering the insurer liable for the full amount of a judgment, rather than only the minimum limits, if the insurer has notice of the lawsuit. However, as Allstate aptly notes, the statute could not have been intended to expand *Markosky* because it was enacted in 1997, before *Markosky* was decided, though it did not take effect until 1999.

The cardinal rule of statutory construction is for the court to ascertain and effectuate the intent of the legislature. *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). In interpreting a statute, words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996). Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers. *TNS*

*Mills, Inc. v. S.C. Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998). If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *Miller v. Doe,* 312 S.C. 444, 447, 441 S.E.2d 319, 321 (1994).

▇▇▇ The court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something. *See State ex rel. McLeod v. Montgomery,* 244 S.C. 308, 314, 136 S.E.2d 778, 782 (1964). Finally, there is a basic presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects. *Whitner v. State,* 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997).

▇▇▇ We find Section 38–77–142(B) is aimed at addressing the concerns stated by this court in *Shores,* while also addressing some concerns raised by our decision. In *Shores,* this court concentrated on the unfairness to the innocent victim in having to rely on the insured to forward the complaint to the insurance company and otherwise cooperating with the insurer prior to the insurer having a responsibility to provide coverage. The statute specifically addresses this court's concern by allowing the injured party to provide notice of the lawsuit to the insurer and to no longer have to rely on the injured party to provide the notice. However, the statute also removes the concern that insurers had to pay default judgments, as in this case, where the insurer had no opportunity to participate in discovery or present a defense.

As the trial court noted, [t]his interpretation allows Plaintiffs the ability to avoid the effects of this section by informing the carrier of the suit by sending a filed courtesy copy of the complaint, which should encourage the open exchange of information and discourage default 'traps' where the insured is not represented by counsel. The alternative is to render meaningless the cooperation clause contained in virtually every policy of automobile liability insurance.

Although the statutory language is couched in terms which address the opposite of the situation in this case, we find the

statute is unambiguous and clearly states the insurer cannot enforce a cooperation clause when it has actual knowledge and its insured otherwise cooperates and does nothing to prejudice the insurer's interest. By clear implication the reverse of that proposition must, of necessity, apply. The statute specifically includes the conditions upon which the insurer may not enforce the cooperation clause. When the legislature spells out the specific conditions an insurer may *not* rely upon to deny coverage or escape liability, then, *a fortiori*, the legislature intended that the absence of those conditions may be relied upon to provide a viable defense. Therefore, consistent with rules of statutory construction, we find the legislature intended to allow an insurer to enforce its cooperation clause if neither the insured nor the innocent victim provided the insurer with notice of the lawsuit. *See Hodges v. Rainey*, 341 S.C. 79, 86, 533 S.E.2d 578, 582 (2000) (The canon of construction *'expressio unius est exclusio alterius'* or *'inclusio unius est exclusio alterius'* holds that 'to express or include one thing implies the exclusion of another, or of the alternative.').

 Additionally, under the system established in *Shores*, attorneys for the injured third party had no incentive to inform the insurer of the lawsuit. However, in addition to being zealous advocates on behalf of their clients, members of the bar are also officers of the court. The Canons of Professional Ethics, the predecessor to the Rules of Professional Conduct, prohibit an attorney from engaging in practices that bring the courts or the legal profession into disrepute. *Norris v. Alexander*, 246 S.C. 14, 19, 142 S.E.2d 214, 217–18 (1965). Activities undertaken for the purpose of evading the full and fair litigation of a case on its merits do not promote the essential goals upon which the Rules of Professional Conduct rest.

 Finally, the primary policy undergirding the *Shores* holding has also been changed by statute. Our holding in *Shores* was premised on the mandatory minimum limits required by statute, which could not be defeated by contract. The same act containing Section 38–77–142(B) also contained the provision codified at Section 56–10–510. Under that section, South Carolina allows a person to be uninsured by paying a fee and registering with the Division of Motor Vehicles.

S.C.Code Ann. § 56–10–510 (Supp.2001). Thus, South Carolina is no longer a mandatory insurance state, the critical difference being that such policies are rendered voluntary. [I]nsurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or public policy. *Penn. Nat'l Mut. Cas. Ins. Co. v. Parker,* 282 S.C. 546, 550–51, 320 S.E.2d 458, 461 (Ct.App.1984) (citations omitted); *see also USAA v. Markosky,* 340 S.C. 223, 226, 530 S.E.2d 660, 662 (Ct.App.2000).

## CONCLUSION

We hold section 38–77–142(B) is unambiguous and was clearly intended by the legislature to address the situation presented in *Shores.* We find the trial court's interpretation promotes the truth-seeking function of the courts and allows for an open process aimed at a full examination of all relevant facts. Thus, we conclude the interpretation of section 38–77–142(B) offered by the trial court—that an insurer who has no actual notice of a complaint or motion for judgment having been served on an insured and with whom the insured fails to cooperate to the prejudice of the insurer can rely on its cooperation clause as a defense to deny a claim—is the correct construction of the legislative intent.

**AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.