# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Andrew P. Neumayer, Respondent,

v.

Philadelphia Indemnity Insurance Company, Primary Colors Child Care Center, Jocelyn Knox DeMartelare, and Asia N. Partman, Defendants,

Of Whom Philadelphia Indemnity Insurance Company is the Appellant.

Appellate Case No. 2016-001710

———————

Appeal from Richland County
L. Casey Manning, Circuit Court Judge

———————

Opinion No. 27902
Heard March 5, 2019 – Filed July 24, 2019

———————

**REVERSED**

———————

Phillip E. Reeves, of Gallivan, White & Boyd, PA, of Greenville,  Curtis W. Dowling and Matthew G. Gerrald, both of Barnes, Alford, Stork & Johnson, LLP, of Columbia, for Appellant.

Blake A. Hewitt, of Bluestein Thompson Sullivan LLC, and Gerald Eugene Reardon, both of Columbia, for Respondent.

———————

**JUSTICE HEARN:** In this case, we decide whether notice clauses in automobile insurance policies are rendered meaningless by Section 38-77-142(C) of the South Carolina Code (2015)[1]. The trial court found the clause in this policy[2] void and accordingly required the insurance company to pay the full default judgment entered against its insured. The insurer appealed, and we now reverse.

## FACTS

On January 25, 2013, a bus driven by Defendant Asia Partman struck Respondent Andrew Neumayer while he was a pedestrian in Cayce, South Carolina. EMS transported Neumayer to Lexington Medical Center where he was diagnosed with a ruptured spleen, broken left ribs, left humerus fracture, left pneumothorax, and a punctured lung. After eight days in the hospital and medical costs of approximately $122,000, Neumayer was released.

Partman worked for Defendant Primary Colors Child Care Center, and in November of 2013, Neumayer filed a lawsuit against both defendants, alleging negligence against Partman and Primary Colors. The defendants did not answer or respond in any fashion, and after a default judgment was entered, the court held a damages hearing, where it awarded Neumayer $622,500.

---

[1] "Any endorsement, provision, or rider attached to or included in any policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section is void."

[2] The notice and cooperation provision at issue in this case is located under the "Business Auto Conditions" section and states:

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**
We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss."
        \*     \*     \*
**b.** Additionally, you and any other involved "insured" must:
        \*     \*     \*
**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

Over eighteen months after the entry of default, Philadelphia Indemnity Insurance Co. (Philadelphia), Primary Colors' insurance carrier, received notice that its insured was involved in a lawsuit that culminated in a default judgment. While the record is unclear as to why it took eighteen months to notify Philadelphia, it ultimately received notice when Neumayer's counsel faxed documents seeking to collect $622,500. Philadelphia declined to pay that amount, instead asserting its indemnification obligation was limited to $25,000 because South Carolina jurisprudence requires an insurer to pay only the minimum limits when it is substantially prejudiced by its insured's failure to provide notice of a lawsuit. Further, Philadelphia contended the failure to receive notice of the underlying lawsuit prevented an opportunity to investigate and defend.

Thereafter, Neumayer filed this declaratory judgment action asking the court to require Philadelphia to pay the judgment in full. Philadelphia answered and asserted a counterclaim against Neumayer and cross-claims against officials at Primary Colors, arguing that its indemnity obligation was limited to $25,000. Both parties moved for summary judgment, and after a hearing, the court found in favor of Neumayer. The circuit court framed the issue as "whether or not Philadelphia can properly reduce the available coverage to the statutory minimum through a cooperation provision in the Policy." Relying on section 38-77-142(C), the court held an insured's breach of a notice clause cannot reduce the amount of available coverage. Further, the court cited to this Court's decision in *Williams*, where we held a family step-down provision was void under section 38-77-142(C) because it purported to reduce coverage from the policy's liability limits to the minimum amounts prescribed in section 38-77-140.[3] Philadelphia appealed to the court of appeals, and we certified the case pursuant to Rule 204(b), SCACR.

## ISSUE

Did the circuit court err in finding section 38-77-142(C) invalidated the notice and cooperation clause in a policy providing higher limits than statutorily required?

## STANDARD OF REVIEW

When cross motions for summary judgment are filed, the issue is decided as a matter of law. *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011). When reviewing an insurance policy, the general rules of contract

---

[3] *Williams v. Gov't Employees Ins. Co. (GEICO)*, 409 S.C. 586, 762 S.E.2d 705 (2014).

construction apply. *B.L.G. Enterprises, Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999). An insurer may impose conditions on a policy provided they do not contravene public policy or violate a provision of law. *Williams*, 409 S.C. at 598, 762 S.E.2d at 712. Further, the interpretation of a statute is a question of law, which we review de novo. *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## DISCUSSION

Philadelphia contends the circuit court's decision, if upheld, would render obsolete all notice clauses in insurance policies, provisions that have been prevalent since the inception of automobile liability insurance, thereby effecting a sea change in South Carolina insurance law. Conversely, Neumayer rejects this assertion, arguing that section 38-77-142(C) bars these clauses. We agree with Philadelphia.

In order to fully address the issue and clarify any ostensible inconsistencies in South Carolina appellate jurisprudence in this area, we examine the purpose of notice clauses and trace their history in this state. Nearly every insurance policy contains a provision requiring the insured to timely notify its insurer when a lawsuit is filed against the insured. Common sense dictates that the insurer must have notice of a claim or lawsuit in order to properly investigate and defend against it, and these clauses ensure that the insurer receives notice by imposing this obligation on the insured. *Factory Mut. Liab. Ins. Co. of Am. v. Kennedy*, 256 S.C. 376, 381, 182 S.E.2d 727, 729 (1971). Despite their apparent straightforward purpose, litigation involving notice and cooperation clauses has ensued for over a century. As early as 1907, this Court discussed a notice clause, holding that the insured's duty to "send the summons immediately to the insur[ance] company, means that these things should be done with reasonable promptness under the circumstances . . . ." *Edgefield Mfg. Co. v. Maryland Cas. Co.*, 78 S.C. 73, 81, 58 S.E. 969, 971 (1907). Subsequent cases considered the effect of these clauses. *See, e.g.*, *Walker v. New Amsterdam Cas. Co.*, 157 S.C. 381, 154 S.E. 221, 222 (1930) (discussing a policy that required the insured "give immediate written notice of any accident, and like notice of any claim or suit resulting therefrom, together with every summons or other process" to the insurer); *Brown v. State Farm Mut. Auto. Liab. Ins. Co.*, 233 S.C. 376, 380, 104 S.E.2d 673, 674 (1958) (assuming, without deciding, that the insurance policy's notice clause was a condition precedent to coverage but finding the issue of whether the insurer waived that provision is a jury question).

Courts eventually recognized the potential inequities in permitting an insurer to avoid coverage to an innocent third party merely because the at-fault party—the

insured—did not inform its insurer of a lawsuit. Accordingly, many jurisdictions, including South Carolina, judicially adopted a notice-prejudice rule, whereby the insurer had the burden to show that it was substantially prejudiced by the failure of its insured to comply with the notice and cooperation provisions. *Vermont Mut. Ins. Co. v. Singleton By & Through Singleton*, 316 S.C. 5, 12, 446 S.E.2d 417, 421 (1994) ("Where the rights of innocent parties are jeopardized by a failure of the insured to comply with the notice requirements of an insurance policy, the insurer must show substantial prejudice to the insurer's rights."); *Factory Mutual*, 256 S.C. at 381, 182 S.E.2d at 729–30 ("[W]e think the sound rule to be that, in an action affecting the rights of innocent third parties under an automobile liability insurance policy, the noncompliance by the insured with policy provisions as to notice and forwarding suit papers will not bar recovery, unless the insurer shows that the failure to give such notice has resulted in substantial prejudice to its rights."); *Squires v. Nat'l Grange Mut. Ins. Co.*, 247 S.C. 58, 67, 145 S.E.2d 673, 677 (1965) (placing the burden of proof on the insurer to demonstrate substantial prejudice). This rule prevented an insurer from relying on an immaterial breach by its own insured as a defense to paying an injured third party. Throughout the latter part of the twentieth century, the notice-prejudice rule continued to gain support, and it is now clearly the majority rule. *Century Sur. Co. v. Hipner, LLC*, 377 P.3d 784, 788 (Wyo. 2016) ("A vast majority of jurisdictions now follow the modern trend and have adopted the notice-prejudice rule.").

This Court continued to require a showing of substantial prejudice even as our General Assembly extensively amended the laws governing automobile insurance. Prior to 1974, South Carolina motorists were not required to procure liability insurance before registering and operating a vehicle. S.C. Code Ann. §§ 46-135 through 46-138.2 (1962). Instead, the legislature only mandated insurance for those who incurred too many traffic violation points on their record or who caused an accident. *Id.* During this period of "voluntary insurance," we continued to adhere to the majority view that insurers could not escape liability to an innocent party when its insured failed to comply with a notice clause unless the insurer proved it was substantially prejudiced by the failure to receive timely notice. *Factory Mutual*, 256 S.C. at 381, 182 S.E.2d at 729–30 (applying the substantial prejudice requirement where the General Assembly sought to protect injured motorists, "short of compulsory insurance, by the enactment of financial responsibility and uninsured motorist statutes").

However, in 1974, the General Assembly reformed our automobile insurance laws by passing the Automobile Reparation Reform Act. *See* S.C. Code Ann. 56-11-10, et seq (repealed and recodified in section 38-77-10 (1976)). This legislation

brought South Carolina in line with the growing trend towards compulsory insurance by requiring every motorist to obtain liability insurance in order to provide protection to those injured by the negligence of another. *Faizan v. Grain Dealers Mut. Ins. Co.*, 118 S.E.2d 303, 311 (N.C. 1961) (noting that many states have compulsory insurance laws); *Shores v. Weaver*, 315 S.C. 347, 354, 433 S.E.2d 913, 916 (Ct. App. 1993) (discussing the transition from voluntary to mandatory insurance). With the adoption of mandatory insurance, the question arose whether an insurer could still rely on the notice clause to defeat statutorily required coverage. The court of appeals addressed this issue in *Shores*, holding an insurer must pay the minimum limits required by law even if it could prove substantial prejudice.

In *Shores*, an innocent passenger in the insured's vehicle was severely injured in an accident. *Id.* at 349, 433 S.E.2d at 913. Shortly thereafter, the driver's insurance company was notified of the claim and assigned it to a local adjuster. The passenger's lawyer attempted to contact the adjuster, offering to settle for the policy's mandatory minimum limit of $15,000. The adjuster refused and three years later, the passenger sued the insured, who failed to forward the pleadings to his carrier. *Id.* at 349, 433 S.E.2d at 914. Approximately two more years passed and following the insured's default and a damages hearing, the court entered judgment for $250,000. Shores, the plaintiff, filed a declaratory judgment action seeking to recover the insured's policy limits, and the insurer moved for summary judgment based on the insured's failure to comply with the notice provision. *Id.* After discussing the shift from voluntary to mandatory insurance, the court held, "[I]n accordance with the public purpose of protecting innocent third parties through mandatory insurance, [the insured's] violation of a provision of the policy providing this mandatory minimal coverage did not defeat or void that coverage." *Id.* at 355, 433 S.E.2d at 917. The court's rationale was grounded on the fact that the legislature mandated minimum limits coverage to protect innocent third parties. *Id.* at 356, 433 S.E.2d at 917. In essence, a contrary holding would have permitted an insurer to deny the very coverage that the General Assembly mandated that all motorists obtain, effectively nullifying the legislature's efforts to safeguard the public. *Id.* at 355, 433 S.E.2d at 917. Accordingly, after *Shores*, an insurer could no longer rely on a policy's notice clause to deny mandatory minimum limits coverage to an injured third party, regardless of prejudice. However, *Shores* left unanswered whether an insurer would be required to pay *more* than minimum limits when the policy at issue contained liability limits above the mandatory minimum.

The court of appeals addressed this precise question in *United Services Automobile Association v. Markosky*, 340 S.C. 223, 530 S.E.2d 660 (Ct. App. 2000). There, Markosky's bicycle collided with a motor vehicle driven by Frazier. *Id.* at

224, 530 S.E.2d at 661. Markosky sued Frazier, who failed to notify her insurance carrier, State Farm. Eventually, a default judgment was entered against Frazier, and the parties agreed that Markosky's damages were at least $65,000. The policy limits under Frazier's State Farm policy were $50,000 per person, and $100,000 per accident. *Id.* at 225, 530 S.E.2d at 661. Pursuant to *Shores*, State Farm paid the mandatory minimum limit—$15,000—but refused to pay more, citing Frazier's failure to comply with the notice provision. Thereafter, Markosky's UIM carrier, USAA, paid the remaining $50,000 and sought a judicial declaration that State Farm reimburse USAA the additional $35,000 that State Farm should have paid. *Id.* at 225, 530 S.E.2d at 662. The court of appeals agreed with State Farm, holding that the notice-prejudice rule still controlled when policies in excess of the mandatory minimum limits were involved. Accordingly, an insurer could continue to rely on its notice clause to defend against coverage above the mandatory minimum if it proved substantial prejudice.

Shortly before *Markosky*, the General Assembly again significantly reformed this State's automobile insurance laws, adding section 38-77-142, which became effective in 1999.[4] Relevant to our discussion today are subsections (B) and (C) of section 38-77-142. Subsection (B) provides, *inter alia*,

> If an insurer has actual notice of a motion for judgment or complaint having been served on an insured, the mere failure of the insured to turn the motion or complaint over to the insurer may not be a defense to the insurer, nor void the endorsement or provision, nor in any way relieve the insurer of its obligations to the insured, provided the insured otherwise cooperates and in no way prejudices the insurer.

Section 38-77-142(C) provides, "Any endorsement, provision, or rider attached to or included in any policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section is void."

This Court has previously considered both sections, first addressing subsection (B) in *Cowan v. Allstate Insurance Company*[5] and later discussing subsection (C) in *Williams*. In *Cowan*, Allstate issued a policy providing liability coverage for its insured. 357 S.C. at 627, 594 S.E.2d at 276. Thereafter, a permissive

---

[4] *Markosky* did not address this statute, as the accident in question occurred approximately five years before the statute's effective date.

[5] 357 S.C. 625, 594 S.E.2d 275 (2004).

user of the vehicle was involved in an accident with two other people, who then sued the insured and obtained a default judgment. In addition to failing to answer, the insured never notified Allstate, who knew about a potential claim only through a letter of representation it received from plaintiffs' counsel. *Id.* Indeed, Allstate never received notice of a lawsuit filed against its insured until the plaintiffs sought to recover their judgment a month after the entry of default. Allstate refused to pay, and the plaintiffs filed suit seeking payment. Both parties filed motions for summary judgment, and the trial court found in favor of Allstate. *Id.* at 628, 594 S.E.2d at 276.

The court of appeals affirmed, holding section 38-77-142(B) modified *Shores* and permitted Allstate to rely on its notice clause as a defense because it did not have *actual* notice of the lawsuit pursuant to the statute. *Cowan v. Allstate Ins. Co.*, 351 S.C. 626, 631-32, 571 S.E.2d 715, 718 (Ct. App. 2002) rev'd, 357 S.C. 625, 594 S.E.2d 275 (2004). The court reasoned that by stating in subsection (B) that an insurer who has actual notice of a suit cannot enforce a notice clause, the General Assembly must have intended the reverse proposition to be true so that an insurer without notice could rely on its notice clause as a defense to deny a claim brought by a third party. However, this Court reversed, holding that subsection (B) did not alter the *Shores* framework and relieve insurers of their obligation to pay a judgment up to the mandatory minimum limits, regardless of prejudice.

Recently, in *Williams*, this Court addressed section 38-77-142(C), holding that subsection invalidated a family step-down provision because it purported to reduce the amount of coverage from the policy limit to the mandatory minimum limits. 409 S.C. at 603, 762 S.E.2d at 714. There, Edward and Annie Murry were killed after a train collided with their vehicle. *Id.* at 591, 762 S.E.2d at 708. The Murry's were married, and both were named insureds under a GEICO policy with limits of $100,000 per person, not to exceed $300,000 per occurrence. *Id.* However, the policy also included a step-down provision, which reduced coverage to the mandatory minimum limits for injured family members. *Id.* at 592, 762 S.E.2d at 708. Both personal representatives filed a declaratory judgment seeking to determine the amount of coverage available, and the trial court ruled in favor of GEICO, finding the policy unambiguous and stating the step-down provision did not violate public policy or section 38-77-142(C). *Id.* at 593, 762 S.E.2d at 709.

This Court reversed, holding the step-down provision void under section 38-77-142(C) because it reduced the amount of coverage available under the policy. *Id.* at 608, 762 S.E.2d at 717. We acknowledged a split of authority in other jurisdictions concerning the viability of step-down provisions but agreed with those courts that found the provisions violated public policy. We agreed with the Supreme Court of

Kentucky, which, in invalidating a similar provision, refused to embrace the antiquated argument that such provisions were designed to deter potential collusion between family members. *Id.* at 605, 762 S.E.2d at 715 (citing *Lewis v. West American Ins. Co.,* 927 S.W.2d 829 (Ky. 1996)). Quoting *Lewis*, this Court stated, "To uphold the family [step-down] exclusion would result in perpetuating socially destructive inequities." *Williams*, 409 S.C. at 605, 762 S.E.2d at 715.

In light of this historical framework, we turn to the issue before us. Philadelphia contends the circuit court erred by finding that section 38-77-142(C) and our holding in *Williams* expanded *Shores* to require insurers to pay up to policy limits, even if they are substantially prejudiced by their insured's failure to provide notice of a lawsuit. Additionally, Philadelphia asserts the notice clause is a condition precedent to coverage, and therefore, section 38-77-142(C) is not triggered. Conversely, Neumayer argues the notice provision is not a condition precedent and urges this Court to hold that the clause violates section 38-77-142(C). We note Philadelphia never argued in its motion for summary judgment that the notice clause was a condition precedent, and thus arguably advances a different argument on appeal than that raised to the circuit court. *See Stanley v. Atl. Title Ins. Co.*, 377 S.C. 405, 413, 661 S.E.2d 62, 66 (2008) (finding an issue unpreserved where the argument on appeal differed than raised below). However, it is not necessary that we find that notice provisions are conditions precedent to coverage because we agree with Philadelphia that the clause at issue here does not violate section 38-77-142(C) or *Williams*.

We are convinced that in enacting section 38-77-142(C) in 1999, the General Assembly did not intend to eviscerate settled law concerning notice clauses. These policy conditions balance the insurer's important interests in receiving notice of a lawsuit and an injured person's right to recover against a negligent motorist. The driving force behind the notice-prejudice rule is that there is "no sound reason…to permit a mere technical noncompliance to deprive an innocent third party of benefits to which he would otherwise be entitled." *Factory Mut. Liab. Ins. Co. of Am. v. Kennedy*, 256 S.C. 376, 381, 182 S.E.2d 727, 729 (1971). Rather than provide a "technical escape-hatch" for the insurer to deny coverage, the notice-prejudice rule balances both interests without a wholesale prohibition of these clauses. *See State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of Louisiana*, 56 So. 3d 1236, 1246 (La. Ct. App. 2011) ("The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract…."); *B.L.G. Enterprises, Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535–36, 514 S.E.2d 327, 330 (1999)

("[I]nsurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition."). Further, these clauses are routinely found in insurance policies and do not implicate the same public policy interests inherent in *Williams*. *See Harris v. Prudential Prop. & Cas. Ins. Co.*, 632 A.2d 1380, 1382 (Del. 1993) (holding an insurer must pay the mandatory minimum limit but may rely on a cooperation clause to defeat coverage in excess of that amount despite previously finding a household exclusion—similar to the provision in *Williams*—void).

Finally, the General Assembly presumably was aware of *Shores* when it amended the insurance laws. We believe the inclusion of section 38-77-142(B) demonstrates the legislature's recognition of the role notice provisions play in insurance contracts. Had the General Assembly intended to categorically prohibit the enforcement of notice clauses in all policies, it would have done so. We therefore refuse to read Section 38-77-142(C) to abolish notice and cooperation clauses in insurance contracts.

## CONCLUSION

We hold the circuit court erred in ruling that section 38-77-142(C) invalidates the standard notice clause contained in this insurance policy. While *Shores* requires an insurer to provide the statutorily-mandated minimum coverage, an insurer may continue to invoke notice clauses to deny coverage above the statutory limits, providing the insurer can prove that it was substantially prejudiced by its insured's failure to comply with the provision.[6] Accordingly, we reverse.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**

---

[6] We note that because it is undisputed that Philadelphia did not receive notice until over *eighteen* months after the entry of the default judgment, substantial prejudice exists as a matter of law. *See Merit Ins. Co. v. Koza*, 274 S.C. 362, 364, 264 S.E.2d 146, 147 (1980) ("Here, prejudice is clearly established by the fact that a default judgment was entered against the insured.").