612 S.E.2d 719

**Terry K. JONES, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Respondent.**

No. 3964.

Court of Appeals of South Carolina.

Submitted March 1, 2005.

Decided March 21, 2005.

Rehearing Denied May 19, 2005.

Gary W. Poliakoff, of Spartanburg, for Appellant.

Michael T. Cole and Charles R. Norris, both of Charleston, for Respondent.

ANDERSON, J.:

Terry K. Jones (Jones) initiated this action against State Farm Automobile Insurance Company (State Farm) seeking a declaration that his 1986 Mazda pickup truck was covered under a State Farm policy at the time he was involved in an automobile collision. The trial judge entered summary judgment in favor of State Farm, finding that State Farm had cancelled coverage on the 1986 Mazda prior to the accident. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

As late as November of 1999, State Farm provided insurance for three of Jones's vehicles, including the 1986 Mazda pickup truck. However, on November 5, 1999, State Farm sent a cancellation notice informing Jones that effective November 24, 1999, coverage of the 1986 Mazda would be cancelled due to nonpayment of premiums.

On December 19, 1999, Jones was seriously injured in a motor vehicle collision with Arthur W. Campbell. Jones had been driving the 1986 Mazda. Sometime after the accident, Jones's State Farm agent signed a Form FR–10 which stated: "I hereby affirm that to the best of my knowledge the vehicle described above was insured by State Farm insurance company on the date and time of the accident."

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Jones's medical bills exceeded $200,000. After settling with Campbell's liability carrier, Jones sought a declaration that (1) the 1986 Mazda was covered by State Farm at the time of the collision, (2) he was entitled to $50,000 of underinsured motorist coverage on the Mazda, and (3) he was entitled to stack $50,000 of underinsured motorist coverage from each of the two additional vehicles covered by State Farm. State Farm moved for summary judgment, claiming the policy had been cancelled.

The trial judge ruled that State Farm was entitled to summary judgment because State Farm's cancellation notice complied with S.C.Code Ann. § 38–77–120 (1985), and the Form FR–10 did not affect the cancellation.

## *STANDARD OF REVIEW*

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 601 S.E.2d 342 (2004); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. .267, 603 S.E.2d 629 (Ct.App.2004); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003), *cert. denied.* In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud*, 360 S.C. 615, 602 S.E.2d 747 (2004); *Rife v. Hitachi Const. Mach. Co., Ltd.*, 363 S.C. 209, 609 S.E.2d 565 (2005). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 602 S.E.2d 389 (2004); *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004); *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001).

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *McCall*, 359 S.C. at 376, 597 S.E.2d at 183. Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponents case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004); *Peterson v. West American Ins. Co.*, 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999). The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields*, 354 S.C. 58, 580 S.E.2d 433 (2003); *Rumpf v. Massachusetts Mut. Life Ins. Co.*, 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins v. City of Greenville*, 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004); *Murray v. Holnam, Inc.*, 344 S.C. 129, 542 S.E.2d 743 (Ct.App. 2001).

The determination of legislative intent is a matter of law. *City of Myrtle Beach v. Juel P. Corp.*, 344 S.C. 43, 543 S.E.2d 538 (2001); *Charleston County Parks Recreation Comm'n v. Somers*, 319 S.C. 65, 459 S.E.2d 841 (1995); *Goldston v. State Farm Mut. Auto. Ins. Co.*, 358 S.C. 157, 594 S.E.2d 511 (Ct.App.2004); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken*, 354 S.C. 18, 579 S.E.2d 334 (Ct.App.2003); *see also Johnson v. Pratt*, 200 S.C. 315, 20 S.E.2d 865 (1942) (acknowledging that statutory construction is the province of the courts); *Thompson v. Ford Motor Co.*, 200 S.C. 393, 21 S.E.2d 34 (1942) (noting that the interpretation of the meaning of a statutory term is not a finding of fact).

## *LAW/ANALYSIS*

### I. Requirements of § 38–77–120

Jones argues the trial judge erred in granting summary judgment to State Farm because the cancellation notice

mailed to Jones did not comply with the requirements of South Carolina Code Ann. § 38–77–120 (2002). We disagree.

Section 38–77–120 provides, in pertinent part:

(a) No cancellation ... is effective unless the insurer delivers or mails to the named insured at the address shown in the policy a written notice of the cancellation.... This notice:

(1) must be approved as to form by the director or his designee before use;

(2) must state the date not less than fifteen days after the date of the mailing or delivering on which the cancellation or refusal to renew becomes effective;

(3) must state the specific reason of the insurer for cancellation ... and provide for the notification required by subsection (B) of Section 38–77–390....

(4) must inform the insured of his right to request in writing within fifteen days of the receipt of notice that the director review the action of the insurer....

(5) must inform the insured of the possible availability of other insurance which may be obtained through his agent, through another insurer, or through the Associated Auto Insurers Plan. It must also state that the Department of Insurance has available an automobile insurance buyer's guide regarding automobile insurance shopping and availability, and provide applicable mailing addresses and telephone numbers, including a toll-free number, if available, for contacting the Department of Insurance.

Nothing in this subsection prohibits any insurer or agent from including in the notice of cancellation ..., any additional disclosure statements required by state or federal laws, or any additional information relating to the availability of other insurance. **The insurer must disclose in writing whether the insured is ceded to the facility.**

S.C.Code Ann. (2002) (emphasis added). The language at the center of this logomachy is the last sentence of § 38–77–120(a)—"The insurer must disclose in writing whether the insured is ceded to the facility." State Farm concedes it did not notify Jones that he was not being ceded to the Reinsurance Facility and contends § 38–77–120 does not require it to do so.

## A. Rules of Statutory Interpretation

The cardinal rule of statutory interpretation is to determine the intent of the legislature. *Georgia–Carolina Bail Bonds. v. County of Aiken*, 354 S.C. 18, 579 S.E.2d 334 (Ct.App.2003); *see also Gordon v. Phillips Utils. Inc.*, 362 S.C. 403, 608 S.E.2d 425 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."); *Olson v. Faculty House of Carolina, Inc.*, 344 S.C. 194, 205, 544 S.E.2d 38, 44 (Ct.App.2001) ("The quintessence of statutory construction is legislative intent."). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council*, 350 S.C. 433, 567 S.E.2d 240 (2002); *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County*, 331 S.C. 19, 501 S.E.2d 725 (1998); *State v. Morgan*, 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002); *State v. Hudson*, 336 S.C. 237, 519 S.E.2d 577 (Ct.App.1999).

The legislature's intent should be ascertained primarily from the plain language of the statute. *State v. Landis*, 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004); *Morgan*, 352 S.C. at 366, 574 S.E.2d at 206; *Stephen v. Avins Const. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. v. Leatherman*, 309 S.C. 174, 420 S.E.2d 843 (1992); *Morgan*, 352 S.C. at 366, 574 S.E.2d at 206; *Hudson*, 336 S.C. at 246, 519 S.E.2d at 582. The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. *Smith v. South Carolina Ins. Co.*, 350 S.C. 82, 564 S.E.2d 358 (Ct.App.2002). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *South Carolina Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.*, 355 S.C. 361, 585 S.E.2d

292 (2003); *Paschal v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995); *Cowan v. Allstate Ins. Co.,* 351 S.C. 626, 631, 571 S.E.2d 715, 717 (Ct.App.2002); *Olson,* 344 S.C. at 207, 544 S.E.2d at 45; *see also City of Camden v. Brassell,* 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Cooper v. Moore,* 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002); *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994); *Carolina Alliance for Fair Employment v. S.C. Dept. of Labor, Licensing, Regulation,* 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Bayle v. South Carolina Dept. of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *Durham v. United Cos. Fin. Corp.,* 331 S.C. 600, 503 S.E.2d 465 (1998); *Adkins v. Comcar Indus., Inc.,* 323 S.C. 409, 475 S.E.2d 762 (1996); *Worsley Cos. v. South Carolina Dep't of Health Envtl. Control,* 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); *see also Timmons v. South Carolina Tricentennial Commn.,* 254 S.C. 378, 175 S.E.2d 805 (1970) (observing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Hodges v. Rainey,* 341 S.C. 79, 533 S.E.2d 578 (2000); *Bayle,* 344 S.C. at 122, 542 S.E.2d at 739.

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan,* 352 S.C. at 367, 574 S.E.2d at 207; *see also Wade v. Berkeley County,* 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. *Hudson,* 336 S.C. at 247, 519 S.E.2d at 582;

*Brassell,* 326 S.C. at 561, 486 S.E.2d at 495; *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck,* 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins,* 352 S.C. 162, 573 S.E.2d 783 (2002); *Adams v. Texfi Indus.,* 320 S.C. 213, 464 S.E.2d 109 (1995); *Brassell,* 326 S.C. at 560, 486 S.E.2d at 494.

"A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. The real purpose and intent of the lawmakers will prevail over the literal import of the words." *Browning v. Hartvigsen,* 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992); *see also Georgia–Carolina Bail Bonds,* 354 S.C. at 22, 579 S.E.2d at 336 ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."); *Municipal Ass'n of South Carolina v. AT & T Communications of S. States, Inc.,* 361 S.C. 576, 606 S.E.2d 468 (2004) (observing that the language of a statute must be read in a sense which harmonizes with its subject matter and accords with its general purpose).

Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 529 S.E.2d 280 (2000); *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 440 S.E.2d 364 (1994). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *See Hinton v. South Carolina Dept. of Prob., Parole and Pardon Servs.,* 357 S.C. 327, 592 S.E.2d 335 (Ct.App.2004), *cert. granted* (Jan. 12, 2005); *Doe v. Roe,* 353 S.C. 576, 578 S.E.2d 733 (Ct.App.2003), *cert. denied.*

## B. Interpretation of § 38–77–120

The "facility" referred to in § 38–77–120 is the South Carolina Reinsurance Facility (the Facility) created by S.C.Code Ann. § 38–77–510. "The South Carolina Reinsurance Facility ... is a nonprofit organization which enables automobile in-

surers to obtain reinsurance for high risk drivers which they normally would not insure." *State Farm Mut. Auto. Ins. Co. v. Lindsay,* 288 S.C. 327, 328, 342 S.E.2d 599, 599 (1986). The Facility is soon to be defunct, however, due to Act. No. 154 § 30(1997), which repealed §§ 38–77–510 through –630 effective January 1, 2006. Pursuant to S.C.Code Ann. § 38–77–590(g), "A producer designated under this section may not write new private passenger and commercial automobile insurance business to be placed in the facility after March 1, 1999. A policy with an effective date after March 1, 2002 shall not be accepted by the facility." S.C.Code §§ 38–91–10 through –420 created the Joint Underwriting Association to temporarily replace the Facility as the primary residual market mechanism from March 1, 1999 through February 28, 2003. *See* Note, *Lifting the Iron Curtain of Automobile Insurance Regulation,* 49 S.C.L.Rev. 1193, 1207 (Summer 1998). Currently, the Associated Auto Insurers Plan serves as the residual market mechanism. S.C.Code Ann. 38–77–810 through –880 (2002). *See generally* Maybank et al., *The Law of Automobile Insurance in South Carolina* I–74—I–98 (4th ed. 2000); *Lifting the Iron Curtain,* 49 S.C.L.Rev. 1193.

Undisputedly, § 38–77–120 required an insurance company to notify an insured when he or she had been ceded to the Facility. This requirement served to notify the insured that he or she had been deemed a high-risk driver subject to recoupment charges. *See Lifting the Iron Curtain,* 49 S.C.L.Rev. n. 167 (noting that former § 38–77–600 set a recoupment fee to cover operating losses the Facility incurred during the preceding year). However, State Farm contends, and we agree, that an insurer is not required to inform the insured he or she **has not** been ceded to the Facility. We do not believe that Jones's specious construction of § 38–77–120 comports with the intent of that section.

Section 38–77–120 serves to put on notice drivers whose policies are being cancelled or will not be renewed. In subsection (a), the statute sets forth five mandates aimed at giving the insured adequate notice of the cancellation of his or her policy. The notice must: (1) be approved by the Director; (2) state the effective date of cancellation; (3) state the reason for cancellation; (4) inform the insured of his right to request review of the termination; and (5) provide the insured with

information regarding other available sources of insurance. State Farm mailed a complying cancellation notice on November 5, 1999—approximately forty days before the December 19 accident. Jones does not contest that State Farm notified him of the cancellation of his policy.

Jones's rendering of the statute would require disclosure of a non-event—i.e., that he has not been deemed a high risk driver; therefore he will not be ceded to the Facility; and he will not be subject to recoupment fees. Such an interpretation of § 38–77–120 is not a practical and reasonable interpretation consistent with the design of the legislature. Instead, Jones's interpretation would "lead to a result so plainly absurd it could not have been intended by the legislature." *Unisun*, 339 S.C. at 368, 529 S.E.2d at 283. Jones states no rationale supporting a policy of requiring an insurance company to inform insureds they are **not** being ceded to an organization designed to· facilitate the acquisition of insurance for high-risk drivers.

Moreover, the sentence at issue is not one of the five enumerated mandates, but is provided in the flush paragraph at the end of the subsection. The penultimate sentence of subsection (a) informs insurers that they are not prevented from providing additional information in the notice. The sentence in controversy then gives one piece of additional information that must be provided. Although the placement of the controverted sentence does not dictate our decision, the sentence's location does suggest the legislature did not consider the final sentence of subsection (a) as significant as the enumerated directives.

Considering the content of the sentence; the purpose of the statute; and the placement of the sentence, we hold, as a matter of law, that State Farm was not required to notify Jones that he had **not** been ceded to the Facility.

## II. Effect of Form FR–10

Jones asserts the trial judge erred in granting summary judgment because the FR–10 form signed by his insurance agent raised factual issues as to the existence of coverage. We disagree.

▬▬▬ First, this issue is not preserved for our review. In his memorandum in opposition to summary judgment, and in

his argument to the trial judge, Jones simply asserted that the Form FR–10 created an issue of fact. He did not set forth a concomitant legal theory which would entitle him to recovery based on the FR–10. Jones did not make a Rule 59(e) motion to alter or amend the judgment. For the first time on appeal, Jones contends the Form FR–10 estops State Farm from denying coverage.

 An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review. *Lucas v. Rawl Family Ltd. P'ship,* 359 S.C. 505, 598 S.E.2d 712 (2004); *United Student Aid Funds, Inc. v. South Carolina Dep't of Health and Envt'l Control,* 356 S.C. 266, 588 S.E.2d 599 (2003); *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000); *Austin v. Specialty Transp. Services, Inc.,* 358 S.C. 298, 594 S.E.2d 867 (Ct.App.2004); *see also Ellie, Inc. v. Miccichi,* 358 S.C. 78, 594 S.E.2d 485 (Ct.App.2004) (noting it is axiomatic than an issue cannot be raised for the first time on appeal). An issue is not preserved where the trial court does not explicitly rule on an argument and the appellant does not make a Rule 59(e) motion to alter or amend the judgment. *Hawkins v. Mullins,* 359 S.C. 497, 597 S.E.2d 897 (Ct.App. 2004). Jones did not present an estoppel argument to the trial judge; therefore, this issue is not preserved.

Second, as to the merits, we find the trial judge properly granted summary judgment. In a light most favorable to Jones, the FR–10 did not raise an issue as to the validity of State Farm's cancellation notice. The form simply states **"to the best of my knowledge** the vehicle described above was insured by State Farm insurance company on the date and time of the accident." (Emphasis added). State Farm presented evidence that Jones, in fact, was not insured by State Farm at the time of the accident because his policy had been cancelled weeks earlier. Jones cites no legal authority establishing that a policy, once effectively canceled, can somehow become renascent by virtue of a qualified representation of coverage by an agent after a loss.

 Even if Jones's estoppel argument were properly preserved, he presented no evidence demonstrating his ability to establish the elements of estoppel. In *Provident Life &*

*Acc. Ins. Co. v. Driver,* 317 S.C. 471, 451 S.E.2d 924 (Ct.App. 1994), we observed that "[u]nder South Carolina law, the essential elements of estoppel are divided between the estopped party and the party claiming estoppel." *Id.* at 477, 451 S.E.2d at 928 (citations omitted).

> As to the estopped party, the essential elements are: (1) conduct amounting to a false representation or concealment of material facts, or conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the party's subsequent assertions; (2) intention or expectation that such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. As to the party claiming estoppel, the essential elements are: (1) lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts; (2) reasonable reliance on the other party's conduct; and (3) a prejudicial change in position.

*Id.* (citations omitted). *Accord Ingram v. Kasey's Associates,* 340 S.C. 98, 531 S.E.2d 287 (2000). Jones did not present evidence that State Farm made a knowingly false representation with the intent to induce Jones into action. Further, Jones failed to submit evidence that he did not have notice of the cancellation, and that he detrimentally relied on the Form FR–10.

In *Bannister v. Ohio Cas. Ins. Co.,* 314 S.C. 388, 444 S.E.2d 528 (Ct.App.1994), the appellant argued, "Ohio Casualty is estopped to deny coverage because an FR–10 form was executed by one of the company's agents." *Id.* at 393, 444 S.E.2d at 531. We rejected the appellant's argument, finding he "ha[d] not demonstrated any of the elements of estoppel." *Id.* Similarly, Jones has failed to demonstrate any of the elements of estoppel in the instant case.

Jones has not presented to this Court a reviewable argument, based on the Form FR–10, that would compel reversal of the trial judge's grant of summary judgment.

## CONCLUSION

We hold S.C.Code Ann. § 38–77–120 does not require an insurer to notify an insured that he or she has **NOT** been ceded to the South Carolina Reinsurance Facility. Further,

the Form FR–10 did not create an issue of fact which could have entitled Jones to the relief he sought. The trial judge correctly granted summary judgment in favor of State Farm. Accordingly, the decision is

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.