753 S.E.2d 437

**LINCOLN GENERAL INSURANCE COMPANY, individually and as subrogee of Jose Salgado, Blanca Acosta, Miguel S. (age 14), Ofelia S. (age 10), and Cathy Alafaro, Respondents,**

v.

**PROGRESSIVE NORTHERN INSURANCE COMPANY, Avery Strickland, and Jennifer Strickland, Defendants,**

**Of whom, Progressive Northern Insurance Company is the Appellant.**

**Appellate Case No. 2011–196347.**

**No. 5070.**

Court of Appeals of South Carolina.

Heard Dec. 12, 2012.

Decided Jan. 2, 2013.

Adam J. Neil, of Murphy & Grantland PA, of Columbia, for Appellant.

Jeffrey J. Wiseman, Stephen Lynwood, and Russell G. Hines, all of Young Clement Rivers LLP, of Charleston, for Respondents.

THOMAS, J.

After a car accident, Lincoln General Insurance Company, individually and as subrogee of Jose Salgado, Blanca Acosta, Miguel S., Ofelia S. and Cathy Alafaro (collectively, Respondents) sued Progressive Northern Insurance Company, Avery Strickland, and Jennifer Strickland. Lincoln General sought a declaratory judgment that Jennifer Strickland's policy with Progressive covered the accident, pursuant to the South Carolina Motor Vehicle Financial Responsibility Act (the

MVFRA), for the mandatory minimum policy limits, even though the driver was disqualified from coverage under Jennifer Strickland's policy. The trial court granted summary judgment to Lincoln General. Progressive appeals. We reverse.

**FACTS & PROCEDURAL HISTORY**

The facts are not disputed. Jennifer Strickland and Avery Strickland were married. Jennifer took out an insurance policy with Progressive on a motor vehicle she owned. The record does not contain the entire insurance policy. The record contains an endorsement that provides the following:

> You have named the following person as excluded drivers under this policy:
>
> Avery Strickland Date of Birth: March 25, 1978
>
> No coverage is provided for any claim arising from an accident or loss involving a motorized vehicle being operated by an excluded person. This includes any claim for damages made against any named insured, resident relative, or any other person or organization that is vicariously liable for an accident or loss arising out of the operation of a motorized vehicle by the excluded driver.
>
> . . . .
>
> I declare that either the driver's license of the excluded persons named in this Named Driver Exclusion election has been turned into the Department of Motor Vehicles, or that an appropriate policy of liability insurance or other security as may be authorized by law has been properly executed in the name of the person to be excluded.

The named driver endorsement was signed by Jennifer and indicated that Avery surrendered his license to the Department of Motor Vehicles. No party disputes the accuracy of this representation.

In March 2009, Jennifer entrusted the vehicle to Avery. While operating the car, he was involved in an accident with a vehicle owned by Jose Salgado. Avery was at-fault, but Progressive refused coverage, contending Jennifer's policy was inapplicable while he was driving. Lincoln General paid uninsured motorist benefits to the occupants of Salgado's car under his policy.

Respondents brought suit against Progressive, Jennifer, and Avery. Among other claims and prayers for relief, Respondents sought declaratory judgment that Jennifer's policy with Progressive covered the minimum limits mandated by the MVFRA.

Respondents and Progressive both moved for summary judgment. The trial court granted summary judgment to Lincoln General. It found the MVFRA required Progressive to cover the claim up to the mandatory minimum limits of liability, despite the named driver endorsement in Jennifer's policy. The court reasoned the MVFRA provides that an owner's liability policy is "absolute" when injury occurs and South Carolina case law requires liability carriers to cover losses up to the statutory limits regardless of the endorsement. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in granting Lincoln General summary judgment based upon a finding that Progressive must afford automobile liability insurance coverage up to the minimum limits despite the named driver endorsement?

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP." *Nakatsu v. Encompass Indem. Co.,* 390 S.C. 172, 177, 700 S.E.2d 283, 286 (Ct.App. 2010). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP.

## LAW & ANALYSIS

Progressive argues the trial court erred in awarding minimum limits liability coverage because the named driver endorsement in Jennifer's policy was statutorily authorized and therefore is not inconsistent with the public policy established by the MVFRA. We agree.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *Hodges*

*v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). The court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation. *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 609, 663 S.E.2d 484, 488 (2008). However, statutes relating to an insurance contract are generally part of the contract as a matter of law. *Nakatsu*, 390 S.C. at 178, 700 S.E.2d at 287. To the extent a policy conflicts with an applicable statute, the statute prevails. *Id.*

Under the MVFRA, an insurance carrier's liability for "insurance required by this chapter" is "absolute whenever injury or damage covered by the motor vehicle liability policy occurs." S.C.Code Ann. § 56–9–20(5)(b)(1) (2006). Automobile insurance policies may not be issued unless they "contain[ ] a provision insuring the persons defined as the insured" in liability coverage at a minimum of $25,000 per person for bodily injury, $50,000 per accident for bodily injury, and $25,000 per accident for injury to property. S.C.Code Ann. § 38–77–140(A) (Supp.2011). An "insured" is statutorily defined to include the named insured and resident relative. S.C.Code Ann. § 38–77–30(7) (2002). As a result, resident relatives of the named insured are generally covered as an "insured" under the named insured's policy regardless of whether the named insured gave them permission to operate the covered vehicle. *See* S.C.Code Ann. § 38–77–140(A) (Supp.2011) (providing that automobile insurance policies must provide coverage to "the persons defined as the insured"); § 38–77–30(7) (" 'Insured' means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either . . . .").

■■■ The purpose of the MVFRA is to give greater protection to those injured through the negligent operation of automobiles. *Penn. Nat'l Mut. Cas. Ins. Co. v. Parker*, 282 S.C. 546, 551, 320 S.E.2d 458, 461 (Ct.App.1984). The legislation requires insurance for the benefit of the public, and an

insurer may not "nullify its purposes through engrafting exceptions from liability as to uses which it was the evident purpose of the statute to cover." *Id.* Therefore, our courts will strike down policy provisions that have "the effect of limiting the coverage requirements of the statute[s]." *See id.* (striking an omnibus provision purporting to provide coverage to certain automobiles "not used for business or commercial purposes other than farming" because it had the effect of limiting an insured's coverage in contravention of the mandatory minimum limits).

Nevertheless, our courts have consistently cautioned that "[r]easonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted." *Id.* In fact, our Code specifies certain exclusions that may be included in automobile insurance policies. For example:

> The automobile policy need not insure any liability under the Workers' Compensation Law nor any liability on account of bodily injury to an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance, or repair of the motor vehicle nor any liability for damage to property owned by, rented to, in charge of, or transported by the insured.

S.C.Code Ann. § 38–77–220 (2002). Section 56–9–20(5)(c) of the MVFRA contains similar language. *See* S.C.Code Ann. § 56–9–20(5)(c) (2006) ("The motor vehicle liability policy need not insure any liability under the Workers' Compensation Law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance, or repair of the motor vehicle, nor any liability for damage to property owned by, rented to, in charge of, or transported by the insured.").

■ Further, under section 38–77–340 of our Code, the named insured may agree with the insurer that the named insured's policy "shall not apply" while certain persons operate the motor vehicle:

Notwithstanding the definition of "insured" in Section 38–77–30, the insurer and any named insured must, by the terms of a written amendatory endorsement, the form of which has been approved by the director or his designee, agree that coverage under such a policy of liability insurance shall not apply while the motor vehicle is being operated by a natural person designated by name. The agreement, when signed by the named insured, is binding upon every insured to whom the policy applies and any substitution or renewal of it. However, no natural person may be excluded unless the named insured declares in the agreement that (1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles or (2) an appropriate policy of liability insurance or other security as may be authorized by law has been properly executed in the name of the person to be excluded.

S.C.Code Ann. § 38–77–340 (Supp.2011). The purpose of this section is to "alleviate the problem often faced by the owner of a family policy, who . . . has a relatively safe driving record but is forced to pay higher premiums because another member of the family . . . is by definition also included in the policy coverage." *Lovette v. U.S. Fid. & Guar. Co.*, 274 S.C. 597, 600, 266 S.E.2d 782, 783 (1980) (internal quotation marks omitted) (discussing predecessor statute).

 Here, Progressive is not required to provide minimum limits. The named driver endorsement statute says that, "[n]otwithstanding the definition of 'insured' in Section 38–77–30, . . . *a policy of liability insurance shall not apply* " when the named driver is operating the vehicle. Thus, "the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes" specifies that an insurer's obligation to provide minimum limits for "insureds" is inapplicable when the person named in the endorsement is driving and the statute's remaining requirements are satisfied. Because the policy is not in effect when the named driver is operating the vehicle and *such an endorsement is part of our state's public policy,* the MVFRA's mandate that "[t]he liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage *covered by the motor vehicle liability policy* occurs" does not apply.

We have expounded similar principles in a case addressing a predecessor to the current named driver endorsement statute in *South Carolina Insurance Company v. Barlow,* 301 S.C. 502, 392 S.E.2d 795 (Ct.App.1990). There, we repeated the longstanding principle that insurers may limit liability to certain persons if the limitation "is not in contradiction of some statutory inhibition or public policy." *Id.* at 506, 392 S.E.2d at 797. We then recognized that our legislature intended to protect the public by adopting an "omnibus clause statute" that required insurance policies to cover not only the named insured but also the named insured's resident spouse. *Id.* at 508, 392 S.E.2d at 797. However, we also noted the predecessor endorsement statute *"is not inhibited by"* that public policy. *Id.* (emphasis added). While the omnibus clause statute protected the public, the predecessor endorsement statute "protect[ed], in limited situations, the right of the parties to make their own contract." *Id.*

Respondents cite to a number of cases to support their argument that the named driver endorsement does not obviate Progressive's duty to provide minimum limits because the General Assembly promulgated the MVFRA to protect third parties. *See S.C. Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 382 S.E.2d 11 (Ct.App.1989); *Parker,* 282 S.C. 546, 320 S.E.2d 458. We agree the MVFRA was created to protect third parties. But our cases that hold an injured party can obtain coverage for the minimum limits on a policy despite purportedly falling within an exclusion do not address policy provisions explicitly authorized by statute at the time of the injury. *See, e.g., Am. Mut. Fire Ins. Co. of Charleston, Inc. v. Aetna Cas. & Sur. Co.,* 303 S.C. 301, 303–04, 400 S.E.2d 147, 148 (1991) (holding a provision in a car dealership's policy that "excluded liability coverage for an individual using a covered vehicle while working in the business of servicing automobiles" was invalid with respect to a permissive user who was an employee of another car dealership because the exclusion contravened the MVFRA's requirement that the policy to cover persons defined as "insured," including permissive users, and noting: "certain statutes provide specific exemptions which may be properly included in an automobile liability policy, thus giving rise to a strong inference that no other exceptions were intended" (overruling *Stanley v. Re-*

*serve Ins. Co.,* 238 S.C. 533, 121 S.E.2d 10 (1961), and *Am. Fire & Cas. Co. v. Sur. Indem. Co.,* 246 S.C. 220, 143 S.E.2d 371 (1965), to the extent they were inconsistent with the opinion)); *Jordan v. Aetna Cas. & Sur. Co.,* 264 S.C. 294, 297, 214 S.E.2d 818, 820 (1975) (holding exclusion purporting to relieve the insurer of liability for injuries sustained by the named insured, resident spouses and relatives as well as permittees was unenforceable because it was contrary to the MVFRA: "While parties are generally permitted to contract as they desire, freedom to contract is not absolute and coverage required by law may not be omitted.... It is settled law that statutory provisions relating to an insurance contract are part of the contract, and that a policy provision which contravenes an applicable statute is to that extent invalid"); *Mumford,* 299 S.C. at 18, 382 S.E.2d at 13 (holding a provision that excluded third party liability coverage for "intentional acts" was invalid because (1) it contravened the minimum limits requirement; (2) sections of the MVFRA "list certain exclusions which may properly be placed in an automobile liability policy," none of those sections list an intentional acts exclusion, and "[t]his omission suggests such an exclusion is not valid"; and (3) "[s]ection 38–77–310 expressly authorizes an intentional acts exclusion for personal injury protection coverage," which suggests the legislature did not intend to authorize a similar provision for third party liability coverage); *Parker,* 282 S.C. at 554–55, 320 S.E.2d at 463 (holding void a provision purporting to provide coverage to certain automobiles "not used for business or commercial purposes other than farming" as contravening the minimum limits requirement under the MVFRA and "find[ing] support for[the] holding" in the existence of other sections under the MVFRA because "[t]hese sections list certain exemptions which may properly be included in an automobile liability policy," "[a] business use or other use exclusion is not included," and the expressions of these exclusions "give rise to a strong inference that no other exceptions were intended").

In contrast, and consistent with the principles stated in *Barlow,* we have held that claimants were validly excluded from all automobile coverage due to a statutorily permitted exclusion despite the MVFRA's mandate. *See State Farm Mut. Auto. Ins. Co. v. N. River Ins. Co.,* 288 S.C. 374, 375–76,

342 S.E.2d 627, 627 (Ct.App.1986) (holding a policy provided "no coverage" because an exclusion for bodily injury to "any employee of an insured arising out of his or her employment" was "consonant with two provisions" of the MVFRA that provided "a motor vehicle liability policy need not insure any liability covered by the worker's compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of the motor vehicle"). In *Barlow* and *North River*, the exclusions did not contravene public policy because the exclusions were public policy themselves.

Respondents also rely heavily upon *United Services Automobile Association v. Markosky*, 340 S.C. 223, 530 S.E.2d 660 (Ct.App.2000), and *Allstate Insurance Company v. United States Fidelity & Guaranty Company*, 619 P.2d 329 (Utah 1980), in support of their arguments. However, those cases are not applicable.

In *Markosky*, an insured failed to notify its insurer of a traffic accident, and this court rejected an argument that the MVFRA required the insurer to pay more than the mandatory minimum liability limits to a third party despite the existence of greater policy limits. 340 S.C. at 230–31, 530 S.E.2d at 664. The court acknowledged that an insured's failure to follow the notice provisions of a minimum limits policy does not void the policy. *Id.* at 227–28, 530 S.E.2d at 663 (citing *Shores v. Weaver*, 315 S.C. 347, 354–55, 433 S.E.2d 913, 916–17 (Ct.App. 1993)). But it noted that other courts have addressed "identical" mandatory limits statutes and held similar conduct on the insured's part could defeat entitlement to recovery of more than the minimum limits because the protection afforded by the MVFRA to the policy applied only to coverage required by that legislation. *Id.* at 228, 530 S.E.2d at 663 (citing *Odum v. Nationwide Mut. Ins. Co.*, 101 N.C.App. 627, 401 S.E.2d 87, 91–92 (1991), and *Swain v. Nationwide Mut. Ins. Co.*, 253 N.C. 120, 116 S.E.2d 482, 487–88 (1960)). The court opted to adopt such an approach in light of the legislative directive to construe the MVFRA so as to make its application uniform with substantially identical legislation. *Id.*

In recognizing the need to construe the MVFRA uniformly with similar statutes, this court footnoted thirteen opinions from other states. One of those opinions was the aforementioned *Allstate Insurance Company v. United States Fidelity & Guaranty Company*, which contains a proposition that summarizes the heart of Respondents' argument on appeal:

Contracting parties are free to limit coverage in excess of the minimum required limits, and the [named driver] exclusion found in the contract is valid in relation to any coverage exceeding the minimum amounts. Thus, a balance is struck between the necessity of securing minimum automobile liability coverage and the availability of lower premiums because of the exclusion of high insurance risks.

*Allstate Ins. Co.*, 619 P.2d at 333.

Neither *Markosky*, its citation of *Allstate*, nor *Allstate* itself provide good authority for holding that an insurer is required to provide coverage in this case. First, *Allstate* held that a named driver provision was void under Utah law to the extent it purported to avoid the protection of mandatory minimum limits established by Utah's No–Fault Insurance Act. *Allstate Ins. Co.*, 619 P.2d at 333. The *Allstate* opinion did not address whether any Utah statute specifically authorized named driver exclusions. After the Utah court decided *Allstate*, the Utah legislature promulgated a statute that provided a policy may include a named driver provision to "specifically exclude" certain named drivers "from coverage." *See* Utah Code Ann. § 31A–22–302.5 (2011). Second, the issue in *Markosky* involved whether the insured's conduct in breach of its duty to notify the insured of an accident would result in minimum coverage. *Markosky* did not address the issue here—whether the MVFRA required minimum limit coverage despite a statute that specifically authorized a provision as *part of the state's public policy*. Third, the citation in *Markosky* that included *Allstate* also included decisions from state courts that have adopted positions consistent with ours. *Cf. State Farm Auto. Ins. Co. v. Dressler*, 153 Ariz. 527, 738 P.2d 1134, 1138 (Ct.App.1987) ("[I]t is inconceivable that the legislature would purposely enact statutory language that authorized the insurer to exclude coverage for personal liability incurred by the unacceptable driver and to exclude vicarious liability incurred due to the unacceptable driver's conduct, but not to exclude coverage for the named insured's personal liability for negli-

gently entrusting a vehicle to the same unacceptable driver. Accordingly, we hold that State Farm's driver exclusion endorsement validly insulated State Farm from *any liability or obligation* under appellant Donald Dressler's automobile liability policy for any claim generated as a result of Joyce Dressler's operating the insured vehicle." (emphasis added)); *Detroit Auto. Inter–Ins. Exch. v. Comm'r of Ins.*, 86 Mich.App. 473, 272 N.W.2d 689, 691 (1978) ("It is defendant's position that since the Legislature enacted a comprehensive, compulsory insurance scheme, it would be inconsistent to permit named driver exclusions, as this would force accident victims to obtain a recovery from the personal holdings of those responsible. Defendant contends that the Legislature would not permit a class of drivers, named excluded drivers, to drive totally uncovered by some residual liability insurance. While such a class might have existed before No–Fault, that situation was remedied by the requirement of uninsured motorist coverage. Defendant's position is appealing until one confronts M.C.L. s 500.3009(2); M.S.A. s 24.13009(2). That statute expressly permits the exclusion from coverage of a named person, and provides that the vehicle owner and others legally responsible for the excluded section remain fully, personally liable.").[1]

" '[T]he legislature has determined that for all vehicles registered in South Carolina, at least minimal coverage is necessary to protect the public.' " *Markosky*, 340 S.C. at 230, 530 S.E.2d at 664 (quoting *Shores*, 315 S.C. at 355, 433 S.E.2d

---

1. States disagree as to whether a named driver exclusion authorized by statute is completely or only partly enforceable, but these decisions often turn upon the language and existence of applicable statutes. *Compare Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228 (Alaska 2007), *Dressler*, 153 Ariz. 527, 738 P.2d 1134, *Associated Indem. Corp. v. King*, 33 Cal.App.3d 470, 109 Cal.Rptr. 190 (1973), *Session v. Dairyland Ins. Co.*, 757 P.2d 1169 (Colo.Ct.App.1988), *St. Paul Fire & Marine Ins. Co. v. Smith*, 337 Ill.App.3d 1054, 272 Ill.Dec. 666, 787 N.E.2d 852 (2003), *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678 (Iowa 2008), *Beacon Ins. Co. of Am. v. State Farm Mut. Ins. Co.*, 795 S.W.2d 62 (Ky.1990), *Bellard v. Johnson*, 694 So.2d 225 (La.1997), *Detroit Auto. Inter–Ins. Exch.*, 86 Mich.App. 473, 272 N.W.2d 689, *Garza v. Glen Falls Ins. Co.*, 105 N.M. 220, 731 P.2d 363 (1986), *and Tapio v. Grinnell Mut. Reinsurance Co.*, 619 N.W.2d 522 (S.D.2000), *with State Farm Mut. Auto. Ins. Co. v. Washington*, 641 A.2d 449 (Del.1994), *Iowa Mut. Ins. Co. v. Davis*, 231 Mont. 166, 752 P.2d 166 (1988), *Federated Am. Ins. Co. v. Granillo*, 108 Nev. 560, 835 P.2d 803 (1992), *and Ward v. Baker*, 188 W.Va. 569, 425 S.E.2d 245 (1992).

at 917). However, the legislature has also determined that "coverage under such a policy of liability insurance shall not apply" while a named driver is operating the vehicle so long as the remaining statutory requirements are satisfied. § 38–77–340. As in *Barlow,* the named driver endorsement statute *"is not inhibited by"* the MVFRA's public policy because it constitutes separately approved public policy. *Barlow,* 301 S.C. at 507–08, 392 S.E.2d at 797 (emphasis added). While the MVFRA protects the public, the named driver endorsement statute "protects, in limited situations, the right of the parties to make their own contract." *Id.*

## CONCLUSION

The MVFRA does not permit recovery of minimum limits liability coverage on a motor vehicle liability insurance policy when a person named in a policy provision pursuant to section 38–77–340 is operating the motor vehicle and the requirements of the statute are satisfied because the policy "shall not apply" under those circumstances. Consequently, we reverse the grant of summary judgment to Lincoln General because the MVFRA does not require Progressive to cover the Respondents' claim up to the statutorily set minimum limits of liability.

**REVERSED.**

HUFF and GEATHERS, JJ., concur.