# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Nationwide Insurance Company of America,
Respondent,

v.

Kristina Knight, individually and as Personal
Representative of the Estate of Daniel P. Knight,
Appellant.

Appellate Case No. 2017-001348

---

Appeal From Greenville County
William H. Seals, Jr., Circuit Court Judge

---

Opinion No. 5685
Heard June 4, 2019 – Filed October 2, 2019

---

**AFFIRMED**

---

Edwin L. Turnage, of Harris & Graves, PA, of
Greenville, for Appellant.

Wesley Brian Sawyer and Adam J. Neil, both of Murphy
& Grantland, PA, of Columbia, for Respondent.

---

**MCDONALD, J.:** In this declaratory judgment action to determine whether underinsured motorist (UIM) coverage exists under an automobile insurance policy, Kristina Knight (Knight), individually and as personal representative of the estate of Daniel Knight (Decedent), appeals the circuit court's order granting summary judgment to Nationwide Insurance Company of America (Nationwide). Knight argues South Carolina's excluded driver statute, section 38-77-340 of the

South Carolina Code (2015), and public policy considerations prohibit an insurer from excluding a resident relative from uninsured motorist (UM) or underinsured motorist (UIM) coverage, even when the policyholder has executed an endorsement intentionally excluding the resident relative from "all coverages in [the] policy." We affirm the circuit court's order granting summary judgment.

**Facts and Procedural History**

On May 22, 2014, Knight applied for a Nationwide automobile insurance policy (the Policy) and completed an endorsement (Excluded Driver Endorsement) listing Decedent as an individual excluded from coverage under the Policy.[1] The Excluded Driver Endorsement states, "With this endorsement, all coverages in your policy are not in effect while Danny Knight is operating any motor vehicle." Knight signed this page, on which she also checked the box confirming "the excluded person has obtained insurance or other security to operate motor vehicles."

On December 4, 2015, Nationwide issued the Policy to Knight, who was then engaged to Decedent. The Policy insured a 1996 Ford Ranger and was effective from December 4, 2015, through June 4, 2016. Decedent and Knight married later in December 2015.

On February 2, 2016, a vehicle struck and killed Decedent while he was riding his motorcycle. Decedent's estate collected from the at-fault driver's liability coverage, Decedent's motorcycle policy, and Decedent's UIM coverage from his own automobile policy. Knight subsequently made a claim with Nationwide, seeking to stack her Policy's UIM limits with the other coverages. It is undisputed that the damages here exceed the coverage limits of the Policy.

Nationwide filed a declaratory judgment action seeking a declaration "that it is not required to provide any coverage, including but not limited to underinsured motorist coverage," for any claim "made on account of the February 2, 2016 accident." Knight answered and counterclaimed for breach of contract.

Nationwide moved for summary judgment; Knight filed a cross motion for summary judgment, arguing Nationwide's "insurance policy and [Excluded Driver] endorsement violate the public policy of the State of South Carolina." The circuit

---

[1] The title "Voiding Auto Insurance While Named Person is Operating Car" appears at the top of the Excluded Driver Endorsement.

court heard the motions on May 22, 2017, and subsequently granted Nationwide's motion for summary judgment.

**Standard of Review**

"Because declaratory judgment actions are neither legal nor equitable, the standard of review depends on the nature of the underlying issues." *Goldston v. State Farm Mut. Auto. Ins. Co.*, 358 S.C. 157, 166, 594 S.E.2d 511, 516 (Ct. App. 2004). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Williams v. Gov't Employees Ins. Co. (GEICO)*, 409 S.C. 586, 593, 762 S.E.2d 705, 709 (2014) (quoting *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 610, 730 S.E.2d 862, 864 (2012)).

"The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP." *Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.*, 406 S.C. 534, 538, 753 S.E.2d 437, 439 (Ct. App. 2013) (quoting *Nakatsu v. Encompass Indem. Co.*, 390 S.C. 172, 177, 700 S.E.2d 283, 286 (Ct. App. 2010)). "Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Rule 56(c), SCRCP).

**Law and Analysis**

"An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008). "As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." *Williams*, 409 S.C. at 598, 762 S.E.2d at 712. "Public policy considerations include not only what is expressed in state law, such as the constitution and statutes, and decisions of the courts, but also a determination whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest or manifestly injurious to the public welfare." *Id.* at 599, 762 S.E.2d at 712.

"[S]tatutes relating to an insurance contract are generally part of the contract as a matter of law. To the extent a policy conflicts with an applicable statute, the

statute prevails." *Lincoln Gen. Ins.*, 406 S.C. at 539, 753 S.E.2d at 439–40 (citation omitted). "The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction." *Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 231, 612 S.E.2d 719, 724 (Ct. App. 2005). "A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law." *Id.* at 232, 612 S.E.2d at 724.

South Carolina's excluded driver statute, § 38-77-340, provides:

> Notwithstanding the definition of "insured" in Section 38-77-30, the insurer and any named insured must, by the terms of a written amendatory endorsement, the form of which has been approved by the director or his designee, agree that coverage under such a policy of liability insurance shall not apply while the motor vehicle is being operated by a natural person designated by name. The agreement, when signed by the named insured, is binding upon every insured to whom the policy applies and any substitution or renewal of it. However, no natural person may be excluded unless the named insured declares in the agreement that (1) the driver's license of the excluded person has been turned in to the Department of Motor Vehicles or (2) an appropriate policy of liability insurance or other security as may be authorized by law has been properly executed in the name of the person to be excluded.

S.C. Code Ann. § 38-77-340 (2015). "The purpose of this section is to 'alleviate the problem often faced by the owner of a family policy, who . . . has a relatively safe driving record but is forced to pay higher premiums because another member of the family . . . is by definition also included in the policy coverage.'" *Lincoln Gen. Ins.*, 406 S.C. at 541, 753 S.E.2d at 441 (alterations in original) (quoting *Lovette v. U.S. Fid. & Guar. Co.*, 274 S.C. 597, 600, 266 S.E.2d 782, 783 (1980)).

> An automobile insurance company, in setting its rates, bases those rates at least in part on the probabilities involving the insured and the vehicle(s) he is insuring. Where, as here, the vehicle is not insured by the company from whom coverage is sought, the carrier cannot

accurately calculate its risks.  It is one thing to insure against "unknowable" risks, such as the chance that one will be injured by an underinsured at-fault driver while a passenger in another's vehicle, or as a pedestrian; it is an entirely different calculus where a company's insured owns and operates a motor vehicle, *especially a motorcycle*, not insured by the carrier making its risk assessments.

*Burgess v. Nationwide Mut. Ins. Co.*, 373 S.C. 37, 42, 644 S.E.2d 40, 43 (2007) (emphasis added).

Knight argues the plain language of § 38-77-340 contemplates an exclusion from liability coverage only and the application of the excluded driver endorsement to UIM coverage violates South Carolina's "strong, remedial public policy requiring insurance companies who write automobile insurance in this State to provide portable [uninsured] and [underinsured motorist] coverages to insureds and their families."  However, as the circuit court aptly noted, "UIM coverage is not mandatory in South Carolina."  *See e.g.*, S.C. Code § 38-77-160 (2015) (requiring that automobile insurance "carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute.").  UIM coverage is sold as optional "additional coverage" with a motor vehicle liability policy; thus, certain definitions provided within Title 38, "Insurance," and Title 56, "Motor Vehicles," are helpful to our analysis.

While Title 38 does not define "policy of liability insurance" (as referenced in § 38-77-340), Title 56's Motor Vehicle Financial Responsibility Act (MVFRA)[2] defines a "motor vehicle liability policy" as

(5) An owner's or operator's policy of liability insurance that fulfills all the requirements of Sections 38-77-140 through 38-77-230, certified as provided [in Title 56] and issued, except as otherwise provided by Section 56-9-560, by an insurance carrier duly authorized to transact

---

[2] §§ 56-9-10 to -630 of the South Carolina Code (2018).

business in this State, to or for the benefit of the person or persons named therein as insured, and any other person, as insured, using the vehicle described therein with the express or implied permission of the named insured, and subject to the following special conditions:

. . .

(d)  Additional coverage permitted:  Any policy which grants the coverage required by a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants this excess or additional coverage, the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this article.[3]

S.C. Code Ann. § 56-9-20(5) (2018).  Section 38-77-160, referenced in the MVFRA definition, addresses the UIM coverage that may be purchased as "Additional coverage" with the purchase of a motor vehicle liability policy. Although Title 38 does not define "motor vehicle liability policy," section 38-77-30(1) (2015) defines "Automobile insurance" as

automobile bodily injury and property damage liability insurance, including medical payments and uninsured motorist coverage, and automobile physical damage insurance such as automobile comprehensive physical damage, collision, fire, theft, combined additional coverage, and similar automobile physical damage insurance and economic loss benefits as provided by this chapter written of offered by automobile insurers.  An automobile insurance policy includes a motor vehicle

---

[3] Our court has referenced this definition in explaining that "so long as the mandatory minimum coverage limits are met, an insurer may provide reasonable limitations on optional coverage." *Nationwide Mut. Fire Ins. Co. v. Walls*, Op. No. 5653 (S.C. Ct. App. filed June 5, 2019) (Shearouse Adv. Sh. No. 23 at 15).

policy as defined in item (7)[4] of Section 56-9-20 and
any nonowner automobile insurance policy which covers
an individual private passenger automobile not owned by
the insured, a family member of the insured, or a resident
of the same household as the insured.

S.C. Code Ann. § 38-77-30(1) (2015).  Section 38-77-30(10.5) defines a "Policy of automobile insurance" or "policy" as

a policy or contract for bodily injury or property damage
liability insurance issued or delivered in this State
covering liability arising from the ownership,
maintenance, or use of any motor vehicle, insuring as the
named insured one individual or husband and wife who
are residents of the same household . . . .

Finally, section 38-77-30(15) defines "Underinsured motor vehicle" as "a motor vehicle as defined in [this section] as to which there is bodily injury liability insurance or a bond applicable at the time of the accident in an amount of at least that specified in Section 38-77-140 [providing minimum limits] and the amount of the insurance or bond is less than the amount of the insureds' damage." "UIM coverage is entirely voluntary, and permits insureds, at their option, to purchase insurance coverage for situations where they are injured by an at-fault driver who does not carry sufficient liability insurance to cover the insureds' damages." *Burgess*, 373 S.C. at 42, 644 S.E.2d at 43.

We find that to interpret § 38-77-340 to allow for the intentional exclusion of a resident relative from liability coverage, but not UIM coverage offered as optional, "additional coverage" in conjunction with the same liability policy, would impose a forced construction of the statute not intended by the General Assembly.  *See Jones*, 364 S.C. at 231, 612 S.E.2d at 724 ("The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction.").  In enacting § 38-77-340, the Legislature empowered consumers to choose to limit their coverage—and corresponding premium—within applicable

---

[4] "Presumably, the South Carolina General Assembly intended to amend this section reference to read "item (5)."  In the 1991 Code, item 7 defines motor vehicle liability policy." *Goldston*, 358 S.C. at 177 n.4, 594 S.E.2d at 522 n.4.  However, in the 2018 Code, item 5 defines "motor vehicle liability policy" while item 7 defines "nonresident operating privilege."

statutory constraints. In exercising this option, Knight likely paid a lesser premium—serving the purpose the Legislature sought to achieve through § 38-77-340. *See Lincoln Gen. Ins.*, 406 S.C. at 541, 753 S.E.2d at 441 ("The purpose of [section 38-77-340] is to 'alleviate the problem often faced by the owner of a family policy, who . . . has a relatively safe driving record but is forced to pay higher premiums because another member of the family . . . is by definition also included in the policy coverage.'" (alteration in original) (quoting *Lovette*, 274 S.C. at 600, 266 S.E.2d at 783).

Accordingly, we find the Excluded Driver endorsement validly excluded Decedent from the UIM coverage Knight now seeks to stack. *See Lincoln Gen. Ins.*, 406 S.C. at 547, 753 S.E.2d at 444 (finding "the named driver endorsement statute '*is not inhibited by*' the MVFRA's public policy because it constitutes separately approved public policy. While the MVFRA protects the public, the named driver endorsement statute 'protects, in limited situations, the right of the parties to make their own contract.'" (citation omitted))

We affirm the circuit court's grant of summary judgment.

**AFFIRMED.**

**LOCKEMY, C.J., and SHORT, J., concur.**